Ronald BILLOPS et al., Plaintiffs below, Appellants,

v.

MAGNESS CONSTRUCTION CO., a corporation of the State of Delaware, t/a Brandywine Hilton Inn, Hilton Inns, Inc., a corporation of the State of Delaware, Hilton Hotels Corporation, a corporation of the State of Delaware, and Hilton International Co., a corporation of the State of Delaware, Defendants below, Appellees.

Supreme Court of Delaware.

Submitted May 12, 1978.

Decided July 21, 1978.

Thomas Stephen Neuberger, of Bader, Dorsey & Kreshtool, Wilmington, and Nicholas J. Guarente, Chester, Pa., for plaintiffs below, appellants.

B. Wilson Redfearn, John A. Elzufon and Jeffrey S. Marlin, of Tybout & Redfearn, Wilmington, for defendants below, appellees.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

McNEILLY, Justice.

Plaintiffs brought suit in Superior Court against Magness Construction Co., t/a Brandywine Hilton Inn, Inc., (the franchisee), Hilton Inns, Inc., Hilton Hotels Corporation, Hilton International Co., (collectively denominated as franchisors), and Gray Magness, charging false imprisonment, invasion of privacy intentional and negligent infliction of emotional distress, battery, assault and defamation. The incident which led to the suit occurred at the defendant Brandywine Hilton Inn when the banquet director of the Inn wrongfully attempted to extort funds in addition to those previously paid by plaintiffs for the use of one of the Inn's ballrooms. The suit was dismissed as to defendant Gray Magness, and that ruling is not challenged. The motion of the corporate franchisors for summary judgment was granted after the Superior Court determined that no actual or apparent agency relationship existed between the franchisors and the franchisee, and that, therefore, no legal basis existed for holding the franchisors vicariously liable for the torts of the franchisee or its employees. We reverse.

## I

Viewing the facts in the light most favorable to plaintiffs, the party opposing the motion for summary judgment, *Mechell v. Palmer*, Del.Supr., 343 A.2d 620 (1975), we find the following:

Ronald Billops, on behalf of certain of the plaintiffs, entered into a written contract for the rental of one-half of the Regency Ballroom of the Brandywine Hilton Inn for a social event consisting of an art exhibit, fashion show and dance. Billops paid the entire rental fee in advance, and received a receipt as evidence of the payment. On the day of the event the Brandywine Hilton banquet director wrongfully requested an additional rental payment which was refused. Thereafter, the director and other Hilton personnel harassed plaintiffs and their guests by loudly demanding the additional money, refusing to adequately heat the ballroom, impounding the art exhibit, fail-

ing to provide an adequate dance floor, summoning the State Police, and threatening to have plaintiffs arrested. The complaint alleged that the wrongful acts caused serious injury to the reputation of the plaintiffs, and their association, and also caused physical injury to several plaintiffs resulting from stress created by the incident.

The banquet director responsible for the allegedly wrongful conduct resigned his position with the Brandywine Hilton Inn six weeks after the event. Further facts concerning plaintiffs' reliance on the name Hilton, and concerning the legal and actual relationship between the various corporate defendants are developed in the body of this opinion as necessary for the application of the appropriate legal principles.

## II

Plaintiffs allege the theories of actual and apparent agency for their contention that the franchisors may be held liable for the torts of the franchisee. We address each *seriatum*.

### A.

Actual authority is that authority which a principal expressly or implicitly grants to an agent. *Lind v. Schenley Industries, Inc.*, 3 Cir., 278 F.2d 79 (1960). A franchisor may be held to have an actual agency relationship with its franchisee when the former controls, or has the right to control, the latter's business. *Hoover v. Sun Oil Company*, Del.Super., 212 A.2d 214 (1965); *Singleton v. International Dairy Queen*, Del.Super., 332 A.2d 160 (1975). The vicarious tort liability of a master, or franchisor, flows from an actual agency relationship. *Singleton v. International Dairy Queen, supra*; See also, 62 Am. Jur.2d *Private Franchise* § 16 (1972).

Franchise agreements, in general, attest to the skill of corporate counsel in reserving as many rights in the franchisor as is possible to maintain control and to protect the product and service covered by the trademark or tradename. If, in practical effect, the franchise agreement goes

beyond the stage of setting standards, and allocates to the franchisor the right to exercise control over the daily operations of the franchise, an agency relationship exists. See, for example, *Nichols v. Arthur Murray, Inc.,* 248 Cal.App.2d 610, 56 Cal.Rptr. 728 (1967) in which case the Court found that the right to control retained by the franchisor extended to the day-to-day details of the franchisee's operation, and thus, established a principal-agent relationship.

■ It is our opinion that there are sufficient facts of record which, along with the reasonable inferences therefrom, show day-to-day control of the business of the Brandywine Hilton Inn by the franchisors so that the latter's motion for summary judgment should have been denied leaving the issue of actual agency to be resolved at trial.

Franchisors have issued to the franchisee a detailed and in parts mandatory, operating manual which is incorporated into the franchise agreement. The manual regulates such matters as identification, advertising, front office procedures, cleaning and inspection service for guest rooms and public areas, minimum guest room standards, food purchasing and preparation standards, requirements for minimum supplies of "brand name" goods, staff procedures and standards for soliciting and booking group meetings, functions and room reservations, accounting, insurance, engineering and maintenance, and numerous other details of operation. The franchisee is required to keep detailed records in order for the franchisor to insure compliance with the manual guidelines. In addition, by an express provision of the franchise agreement, the franchisor retains the right to enter the premises of the hotel "to inspect the hotel so as to maintain the high standards and reputation of the system, the good will of the public, and compliance with the provisions of this Agreement [the franchise contract] and the Operating Manual . . .". The apparent strength of the enforceability of the requirements set by the franchising agreement and the Operating Manual lies in the right of unilateral termination for violation

given the franchisor in the following section of the franchise agreement:

> If Licensee violates any provision of this Agreement or of the Operating Manual and such violation continues for a period of twenty (20) days after written notice from Licensor, . . . , then the Licensor without further demand or notice, may declare this License Agreement and all of Licensee's rights hereunder terminated, . . .

While we make no judgment as to whether, in this case, an actual agency relationship exists, we cannot say that it does not. The facts of record reveal a triable issue on the question of actual agency, and defendants were not entitled to summary judgment. See *Cross v. Hair,* Del.Supr., 258 A.2d 277 (1969).

### B.

■ The concept of apparent agency or authority focuses not upon the actual relation of a principal and agent, but the apparent relationship. Manifestations by the alleged principal which create a reasonable belief in a third party that the alleged agent is authorized to bind the principal create an apparent agency from which spring the same legal consequences as those which result from an actual agency. *Finnegan v. Robino-Ladd Co.,* Del.Super., 354 A.2d 142 (1976). The manifestations may be made directly to the third party, or may be made to the community in general, for example, by way of advertising. *Gizzi v. Texaco, Inc.,* 3 Cir., 437 F.2d 308, cert. denied 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 57 (1971); Restatement 2d Agency §§ 8, 8B, 27 (1957). In order to establish a chain of liability to the principal based upon apparent agency, a litigant must show reliance on the indicia of authority originated by the principal, *Bowman v. Home Life Ins. Co. of America,* 3 Cir., 260 F.2d 521 (1958); Restatement 2d, Agency § 267; and such reliance must have been reasonable. *Finnegan Const. Co. v. Robino-Ladd Co., supra.*

The record presents ample evidence of indicies of authority suggesting that franchisees are the agent of the franchisor.

The Hilton logo and sign are required to be displayed to the exclusion of all others. The franchise agreement forbids the mention of any name other than Hilton to the customers of the hotel as management of the Brandywine Hilton Inn. The franchisee is required by the franchising agreement to identify itself completely with the Hilton "system", including the color schemes and design of the Inn which must be consistent with the "system". In fact, defendants admitted in their answer to plaintiff's interrogatories that there is no reasonable basis which can be derived from the method of operation or the physical environment of the Brandywine Hilton Inn from which an ordinary person would have reason to know that he or she was dealing with anyone other than the Hilton Corporation.

Plaintiffs have presented evidence of their reliance on Hilton as a "quality enterprise". Depositions of several of the plaintiffs produced the following testimony:

By Mr. Billops: ". . . we did go to the Hilton Hotel for the evening and the people paid $10.00 for the event and not this shabby treatment . . ."

By Mr. Naylor: "We received letters from the Hilton, signed by Parker [the banquet director] that they were happy that we had picked their hotel to have our affair in. And we said now we have got a first class hotel with a first class affair. That is why we charged $10.00 in advance." ". . . that night the treatment of Parker and the attitude of the personnel at that point, it so alarmed me that it broke my heart because I put a lot of faith and trust into the Hilton, because it was a major hotel . . . ."

These are statements of express reliance on the Hilton name, and the quality it represents.

Questions of apparent authority are questions of fact and are, therefore, for the jury to determine. *Lind v. Schenley Industries, Inc., supra.* While the evidence on behalf of appellants by no means amounts to a clear case of liability, we are of the opinion that reasonable persons could differ regarding whether or not the defendant franchisors cloaked the franchisee with apparent authority, or whether plaintiffs relied thereon. Compare *Gizzi v. Texaco, Inc., supra.* The issues must be determined after fuller development at trial.

We note in passing that the record is silent with regard to the relationship of the various Hilton corporations which we have collectively denominated as the "franchisors", and the franchisee, Brandywine Hilton Inn. It is conceivable that one or several of the Hilton entities have no, or limited contact with the Brandywine Hilton, and thus would not be vicariously liable for the latter's torts. The exact relationships between the various defendants must be explored on remand.

\* \* \* \* \* \*

Material issues of fact appearing, we are of the opinion that the Superior Court incorrectly granted summary judgment in favor of the franchisor defendants, and that ruling is, therefore,

REVERSED and the case is REMANDED for proceedings consistent with this opinion.