## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **B&T LYNCH FAMILY PARTNERSHIP, LLC a Delaware Limited Liability Company,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) | **C.A. No. S15L-09-029 MJB** |
| **WRDG, LLC, a Delaware Limited Liability Company,** | ) ) ) ) | |
| **Defendant.** | ) ) ) | |

## OPINION

**Submitted:** April 15, 2016
**Decided:** July 29, 2016

*Upon Plaintiff's Motion for Summary Judgment,* **GRANTED.**

Dean A. Campbell, Esquire, The Law Office of Dean A. Campbell, LLC, Georgetown Professional Park North Building, 20175 Office Circle, P.O. Box 568, Georgetown, Delaware 19946, *Attorney for Plaintiff*

Robert G. Gibbs, Esquire, Morris James Wilson Halbrook & Bayard, LLP, 107 West Market Street, P.O. Box 690, Georgetown, Delaware 19947, *Attorney for Defendant*

**BRADY, J.**

## I. INTRODUCTION AND FACTS[1]

This is a mortgage foreclosure action brought by B&T Lynch Family Partnership, LLC ("Plaintiff") against WRDG, LLC ("Defendant").[2] The case arises out of the purchase and sale of a 56 lot residential subdivision in Baltimore Hundred, Sussex County, Delaware, referred to as "Water's Run."[3] Defendant purchased Water's Run from Plaintiff with a significant portion of the purchase price provided by a purchase money mortgage.[4]

On March 26, 2010, Defendant signed, sealed, and delivered unto Plaintiff a note in the principal amount of $1,125,000 with an annual interest rate of 4% (the "Note"). Contemporaneously, Defendant signed, sealed, and delivered unto Plaintiff a mortgage (the "Second Mortgage") securing the Note. The first mortgage on Water's Run (the "First Mortgage") is held by Waters Run Investors, LLC ("WRI") and secures a maximum indebtedness of $325,000.

The Second Mortgage required monthly payments and obligates Defendant to pay a $6,000 premium payment per lot sold ("Lot Proceeds") under any subdivision plan. The Second Mortgage also includes an acceleration clause that allows Plaintiff to foreclose in the event of Defendant's failure to cure a default in payment. In addition, the note included a maturity date of January 1, 2013, (the "Maturity Date") when the entire outstanding balance of principal, interest, and any other amounts were payable in full.

On April 20, 2011, Defendant signed, sealed, and delivered to Plaintiff a document entitled "Modification Agreement of Mortgage and Note" (the "Modification Agreement"). This agreement amended the Second Mortgage repayment schedule to extend the period in which

---

[1] Unless otherwise noted, the following facts are taken from Plaintiff's Motion for Summary Judgment and are undisputed by Defendant.
[2] Compl., Item 1 (Sept. 23, 2015).
[3] *Id.*
[4] *Id.*

2

Defendant was allowed to make interest only payments. The agreement provided that both interest and principle payments were to begin on October 11, 2011. The Modification Agreement did not modify the provisions regarding premium Lot Proceeds or the acceleration clause, and explicitly retained the Maturity Date. It is undisputed that despite the extension in the Modification Agreement, Defendant failed to make all of the monthly payments on time and did not start making the interest and principal payments on October 11, 2011.

In August 2010, Defendant entered into a lot purchase agreement with a builder, NVR, Inc., which trades as Ryan Homes ("Ryan Homes"). On or about March 23, 2012, Water's Run was subdivided into 56 residential lots. On January 24, 2014, Plaintiff, Defendant, WRI, Ryan Homes, and several other parties[5] executed a document entitled "Joint Closing and Escrow Instructions" (the "Escrow Agreement"). This agreement provides for disbursements to Plaintiff, Defendant, and other parties upon the sale of lots. The Escrow Agreement also sets a disbursement priority among the parties which applies to both proceeds of lot sales and to the refund of DelDOT bonds. Included in the Escrow Agreement was a general forbearance agreement which prohibits the parties from foreclosing on the property in consideration for distribution of Lot Proceeds in accordance with the agreement.[6] Specifically, the forbearance agreement states:

> In consideration of the payments detailed in Section 2 above, Lynch Horsey, Waters Run, Pennoni and CRELK shall each execute a copy of [the Escrow Agreement] to acknowledge that they will not file any liens against the Lots or take any action against [Defendant] or the Lots (including but not limited to an action for foreclosure) for as long as [Defendant's] proceeds are disbursed as stated herein . . .[7]

---

[5] The other parties are: David G. Horsey & Sons, Inc., a Delaware corporate, Pennoni Associates, Inc., a Delaware corporation, and CRELK Enterprises, LLC, a Maryland limited liability company. The parties do not specific who these other parties are, but note that they have received notice of this action and have not entered an appearance or intervened.

[6] Escrow Agreement, Ex. G to Compl., Item 1 (Sept. 23, 2015).

[7] *Id.*

3

On September 23, 2015, Plaintiff filed the instant action to foreclose upon the Second Mortgage alleging that Defendant failed to deliver $119,383.75, a refund of a DelDOT bond, to the escrow agent for disbursement in breach of the Escrow Agreement.[8] In the complaint, Plaintiff seeks $790,589.06 plus interest in the amount of $25,558.77 through June 20, 2015, pre-judgment interest at 4% annually from June 21, 2015 through the date of judgment, post-judgment interest at the same rate thereafter until payment of the judgment, reasonable attorneys' fees in an amount of 5% of the amount decreed for principal and interest, and costs, damages and expenses of these proceedings.[9] Defendant does not dispute that it failed to distribute the DelDOT bond refund to the escrow agent for distribution or claim that it has made payments in accordance with the Second Mortgage.[10] Rather, Defendant asserts the affirmative defenses of waiver, release, and failure of a condition precedent.[11] Specifically, Defendant asserts that in the Escrow Agreement "Plaintiff agreed not to foreclose so long as it receives payment of 'proceeds'. The default alleged is not a failure to pay proceeds but a failure to submit a refund."[12] On March 24, 2016, Plaintiff filed a Motion for Summary Judgment arguing that there was no issue of material fact and that, when viewing the facts in the light most favorable to Defendant, Plaintiff is entitled to judgment as a matter of law.[13] On April 15, 2016, the Court held oral argument and advised the parties that the matter was taken under advisement.[14]

For the reasons outlined below, Plaintiff's Motion for Summary Judgment is **GRANTED**.

---

[8] *See* Compl., Item 1 (Sept. 23, 2015).
[9] *Id.*
[10] *See* Answer to Compl., Item 6, at ¶14 (Oct. 30, 2015); *see also* Def.'s Resp. to Pl.'s Mot. for Summ. J., Item 9, at 5-6 (April 12, 2016).
[11] Answer to Compl., Item 6, at ¶14 (Oct. 30, 2015).
[12] *Id.*
[13] *See* Pl.'s Mot. for Summ. J., Item 7 (Mar. 24, 2016).
[14] *See* Judicial Action Form, Item 10 (Apr. 15, 2016).

## II. PARTIES CONTENTIONS

### A. Plaintiff's Motion for Summary Judgment

Plaintiff notes that under the rule against perpetuities "no interest in land is good unless it vests, if at all, not later than twenty-one years after some life in being at the creation of the interest."[15] Plaintiff further notes that under Delaware law, courts do not consider whether an interest may, or even probably will, vest within the rule's limitation, but rather "if there is any possibility that the interest will vest beyond the period of the rule, then [the forbearance agreement] is void *ab initio*."[16]

Plaintiff argues that Defendant's failure to deliver $119,383.75 of a DelDOT bond refund to the escrow agent for disbursement was a breach of the Escrow Agreement.[17] Plaintiff argues that in the answer to the complaint, Defendant created a distinction between a "refund" of DelDOT bonds with "proceeds" of lot sales.[18] Plaintiff argues that such a distinction is not supported by the Escrow Agreement because neither "proceeds" nor "refund" is capitalized or a defined term in the contract.[19] Plaintiff further argues that all payments, refunds, and proceeds are disbursed under the same disbursement schedule provided in Section 2 of the Escrow Agreement.[20]

Plaintiff contends that if the Court accepts Defendant's interpretation of the Escrow Agreement—that "proceeds" and "refund" are not used synonymously—the agreement itself is void because it violates the rule against perpetuities.[21] Specifically, Plaintiff argues that the "Second Mortgage constitutes a vested equitable interest in the property, *i.e.* a right of re-entry,

---

[15] Pl.'s Mot. for Summ. J., Item 7, at 8 (Mar. 24, 2016) (citing *Stuart Kingston, Inc.*, 596 A.2d 1378, 1383).
[16] *Id.* (citing *Stuart Kingston, Inc. v. Robinson*, 596 A.2d 1378, 1383 (Del. 1991)).
[17] *Id.* at 5.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.* at 7.

and a vested statutory interest in the property, *i.e.* a right to foreclose."[22] Plaintiff further argues that pursuant to Defendant's interpretation of the Escrow Agreement, the Agreement divests Plaintiff of its property interest and converts it into a remainder interest that is contingent upon Defendant's affirmative act of selling lots.[23] Plaintiff argues that as long as Defendant sells no lots, Defendant will never be in default of the Escrow Agreement and Plaintiff's rights will never vest.[24]

## B. Defendant's Response

Defendant argues that the rule against perpetuities does not apply in this context.[25] Specifically, Defendant contends that the Escrow Agreement, and mortgages in general, create contractual rights which are not subject to the rule against perpetuities.[26] Defendant further argues that the forbearance language in the Escrow Agreement constitutes a waiver by Plaintiff and not the acquisition of a property interest.[27] Therefore, even if the Court were to accept Defendant's interpretation of the Escrow Agreement, the rule against perpetuities does not apply because neither the mortgage nor the Escrow Agreement created rights subject to the rule.[28]

Defendant argues that the Court should find that the terms "proceeds" and "refund" are not synonymous in the Escrow Agreement.[29] To illustrate this point, Defendant lists all the places where the Escrow Agreement uses the terms "proceeds" and "refund".[30] Specifically,

---

[22] *Id.* at 9 (citing *Handler Const., Inc. v. CoreStates Bank N.A.*, 633 A.2d 356, 360, 362 (Del. 1993)).
[23] *Id.*
[24] *Id.* at 7.
[25] Def.'s Resp. to Pl.'s Mot. for Summ. J., Item 9, at 5-6 (April 12, 2016).
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.* at 7-9.
[30] Defendant identifies the following paragraphs in the Escrow Agreement:
    Paragraph 2.A. of the Escrow Agreement states, "[y]our office shall disburse Seller's **proceeds** from the sale of each of the first five lots as follows: . . . (ii) $200,000 to pay the bonds required by the Delaware Department of Transportation ("DelDOT"). Escrow Agreement, Ex. G to Compl., Item 1 (Sept. 23, 2015) (emphasis added).
    Paragraph 2.B. of the Escrow Agreement states, "[a]fter the purchase of the initial five Lots, your office shall disburse Seller's **proceeds** from the sale of each Lot as follows: . . ." *Id.* (emphasis added).

Defendant argues that paragraph 2 of the Escrow Agreement uses the word "proceeds" when addressing the sale of lots but uses the words "refund" or "funds"[31] when addressing the DelDOT bond refund.[32] Defendant further argues that the language throughout the agreement uses the word "proceeds" to refer to sale proceeds whereas paragraph 7 "clearly changes the term to 'refund' or 'fund' to refer to the DelDOT bond money."[33] Defendant argues that it has properly submitted an affirmative defense of waiver based on the forbearance agreement and argues that based on this agreement, Plaintiff has failed to plead a condition precedent to brining a foreclosure action, specifically, Defendant's failure to disburse sale proceeds.

## III. STANDARD OF REVIEW

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

Paragraph 2.C. of the Escrow Agreement states, "[t]he balance of the **proceeds** described in Sections 2A and 2B above, if any, shall be disbursed in the following order as such proceeds become available: . . ." *Id.* (emphasis added).

     Paragraph 4 of the Escrow Agreement states, "Disbursements to Seller. With the exception of Section 2B(iii) above, no **proceeds** shall be disbursed to Seller until Seller has completed all of its development obligations under the Agreement, and provided that the vendors listed in Section 2 above have all been paid in full." *Id.* (emphasis added).

     Paragraph 5 of the Escrow Agreement states, "Release. At the closing for each Lot, Lynch and Waters Run shall each execute a partial release of their respective liens from the Lots each Lot being purchased. No **proceeds** shall be disbursed to Lynch or Waters until you are in position to record the release for each Lot being purchased." *Id.* (emphasis added).

     Paragraph 6 of the Escrow Agreement states, "Forbearance. In consideration of the payments detailed in Section 2 above, Lynch, Horsey, Waters Run, Pennoni and CRELK shall each execute a copy of this Joint Closing and Escrow Instructions to acknowledge that they will not file any liens against the Lots or take any action against Seller or the Lots (including but not limited to an action for foreclosure) for as long as Seller's **proceeds** are disbursed as stated herein. In addition, so long as Purchaser is not in default of the Agreement beyond any and all applicable cure periods, Lynch, Horsey, Waters Run, Pennoni or CRELK agree that they will not interfere with or otherwise terminate Purchaser's rights to purchase Lots under the Agreement." *Id.* (emphasis added).

     Paragraph 7 of the Escrow Agreement states, "Refund of DelDOT Bond. Upon completion of the entrance as required by DelDOT, Seller shall direct DelDOT to deliver the refund of the bond to Escrow Agent. Escrow Agent shall disburse the refund of the DelDOT bond in accordance with the same priority and procedures described above. In the event DelDOT returns the bond to Seller, Seller shall deliver the amount of the bond ($225,000.00) to Escrow Agent within two (2) days of receipt of the funds from DelDOT." *Id.* (emphasis added).

[31] It is important to note that upon review of paragraph 2 of the Escrow Agreement, the term "refund" does not appear anywhere. *See id.* In addition, the only place the term "fund" appears is used in the following context: "to fund any Homeowners Association budget deficit as needed until such time there are enough third party settlements to self-fund the Homeowners Association . . ." *Id.*

[32] Def.'s Resp. to Pl.'s Mot. for Summ, J., Item 9, at 8-9 (April 12, 2016).

[33] *Id.* at 9.

7

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[34] A motion for summary judgment, however, should not be granted when material issues of fact are in dispute or if the record lacks the information necessary to determine the application of the law to the facts.[35] A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[36] Thus, the issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[37]

Although the party moving for summary judgment initially bears the burden of demonstrating that the undisputed facts support his legal claims,[38] once the movant makes this showing, the burden "shifts to the non-moving party to demonstrate that there are material issues of fact for resolution by the ultimate fact-finder."[39] When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.[40]

## IV. ANALYSIS

## A. Applicable Law

Interpreting the language of a contractual provision is a question of law.[41] "It is settled that a contract must be read as a whole and in a manner that will avoid any internal

---

[34] Super. Ct. Civ. R. 56(c).

[35] *Bernal v. Feliciano*, 2013 WL 1871756, at *2 (Del. Super. Ct. May 1, 2013) (citing *Ebersole v. Lowengrub*, 180 A.2d 467, 468 (Del. 1962)).

[36] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

[37] *Id.*

[38] *Hughes ex rel. Hughes v. Christina Sch. Dist.*, 2008 WL 73710, at *2 (Del. Super. Ct. Jan. 7, 2008) (citing *Storm v. NSL Rockland Place, LLC*, 898 A.2d 874, 879-80 (Del. Super. Ct. 2005)).

[39] *Id.*

[40] *Joseph v. Jamesway Corp.*, 1997 WL 524126, at *1 (Del. Super. Ct. July 9, 1997) (citing *Billops v. Magness Const. Co.*, 391 A.2d 196, 197 (Del. Super. Ct. 1978)).

[41] *Pellaton v. Bank of New York*, 592 A.2d 473, 478 (Del. Super. Ct. 1991).

inconsistencies if possible."[42] "The Court's analysis must focus on determining the intent of the parties."[43] In determining the intent of the parties, the Court must first look to the language of the contract.[44] In looking at the language of the contract, the principal question is whether or not the contractual language is ambiguous.[45] "An ambiguity exists when the contractual provisions are 'reasonably or fairly susceptible' of different interpretations or two different meanings."[46] As the Delaware Supreme Court has previously held, an ambiguity "does not exist where the court can determine the meaning of a contract 'without any other guide than a knowledge of the simple facts on which, from the nature of the language in general, its meaning depends.'"[47] Simply because the parties disagree with regard to the proper construction of contractual provisions does not *per se* create an ambiguity.[48] "The Court may not consider extrinsic evidence in an effort to construe an unambiguous contract. When the contractual provision is clear and unambiguous, the court will give the provision's terms their plain meaning."[49]

"The rule against perpetuities has long been accepted as part of the common law of Delaware as a principle grounded in the public policy against restricting the alienability of law and interests in land."[50] "The period of the rule is twenty-one years plus a life in being when the interest was created. A life in being must be a human life and if there is no measuring life, the interest must vest or fail within twenty-one years. Because it exists perpetually, a corporation

---

[42] *Bank of N.Y. Mellon v. Commerzbank Funding Trust II*, 65 A.3d 539, 550 (Del. 2013).
[43] *E.I. Du Pont de Nemours & Co. v. Admiral Ins. Co.*, 711 A.2d 45, 48 (Del. Super. Ct. 1995) (citing *E.I. du Pont de Nemours & Co. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. Super. Ct. 1985)).
[44] *Id.* (citing *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 822 (Del. Super. Ct. 1992).
[45] *Id.*
[46] *Id.* (citing *Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1996 (Del.1992)).
[47] *Rhone-Poulenc Basic Chems. Co.*, 616 A.2d at 1996 (quoting *Holland v. Hannan*, 456 A.2d 807, 815 (D.C. App. 1983)).
[48] *Nemours & Co*, 498 A.2d at 1113.
[49] *Id.*
[50] *Stuart Kingston, Inc.*, 596 A.2d at 1383.

cannot be used as a measuring life for the purposes of the rule."[51]  "The rule against perpetuities is a 'peremptory command of law and not a rule of construction.  If there are two doubtful constructions of the meaning of an instrument, one consistent and the other repugnant to the law, the former will be adopted . . ."[52]

Delaware law provides that the rule against perpetuities applies to direct interests in property and not contractual rights.[53]  In *Reserves Dev. LLC v. R.T. Prop., LLC*, the Court decided a declaratory judgment action with regard to a purchase and sale of real property agreement.[54]  In that case, the plaintiff argued that a paragraph of that agreement violated the rule against perpetuities and therefore was invalid.[55]  The Court held that, "[t]he rule against perpetuities applies to testamentary devices and to rights of first refusal to acquire interests in land.  At issue here are contract rights, not direct interest in property, and the rule against perpetuities does not apply."[56]

## B.  Discussion

No material facts are in dispute.  The parties disagree as to whether DelDOT bond refunds are considered "proceeds" according to the terms of the Escrow Agreement and whether the rule against perpetuities is applicable to the Escrow Agreement.  The Court finds the undisputed facts are a sufficient basis for determining the legal issues, and, therefore, this case is appropriate for summary judgment.

The Escrow Agreement fails to include a definition section which would provide clarity to the meaning of the terms "proceeds" and "refund."  The Court, therefore, must determine

---

[51] *Id.*
[52] *Id.*
[53] *Id.*
[54] *See Reserves Dev. LLC v. R.T. Prop., LLC*, 2011 WL 4639817 (Del. Super. Ct. Sept. 22, 2011).
[55] *Id.*
[56] *Id.* at n. 13.

10

based on the language of the contract what the term "proceeds" was intended by the parties to include.[57]

The parties created a separate section of the Escrow Agreement that specifically addressed distribution of DelDOT bond refunds (Paragraph 7). Distribution of Lot Proceeds was addressed in paragraph 2.[58] Paragraph 2(A) of the Escrow Agreement states how proceeds "For the First 5 Lots" are to be distributed and Paragraph 2(B) provides how the proceeds from the remaining lots are to be distributed.[59] Paragraph 2 of the Escrow Agreement does not make reference to DelDOT refunds.[60] However, Paragraph 7 expressly provides that they are to be disbursed in accordance with Paragraph 2.[61] It is clear from this, that the parties at the time the contract was made did not consider DelDOT refunds and Lot Proceeds to be synonymous. If the parties had intended DelDOT bond refunds to be considered "proceeds" as used throughout the Escrow Agreement, then Paragraph 7 would be unnecessary. Because the parties independently addressed how DelDOT bond refunds were to be distributed according to the Escrow Agreement, the Court finds that the Escrow Agreement is not ambiguous and that DelDOT bond refunds were not intended by the parties to be considered "proceeds." Having determined that DelDOT refunds and "proceeds" are not synonymously used in the Escrow Agreement, the Court must determine whether the agreement violates the rule against perpetuities.

It is well settled Delaware law that the rule against perpetuities applies to property rights and not to contractual rights.[62] This Court has previously stated that "[u]nder Delaware law, it is

---

[57] *See Bank of N.Y. Mellon*, 65 A.3d at 550.
[58] *See CACH, LLC*, 55 A.3d at 349 (internal citations omitted).
[59] Escrow Agreement, Exhibit G to Compl., Item 1 (Sept. 23, 2015).
[60] Although paragraph 2 does include the word "fund" it merely uses the term in its ordinary usage—to provide with money for a particular purpose. *See id.* The only other place the term "fund" is used is in the agreement is in language that was crossed out by the parties, but again the term is used in the ordinary scene of the word. *See id.*
[61] Escrow Agreement, Exhibit G to Compl., Item 1 (Sept. 23, 2015).
[62] *See Reserves Dev. LLC*, 2011 WL 4639817.

11

well established that a mortgage represents an interest in land."[63]   In the instant matter, the Escrow Agreement affects those property rights conveyed in the Second Mortgage.  The Escrow Agreement affects Defendant's property rights and is, therefore, subject to the rule against perpetuities.[64]

When there is "any possibility" that an interest in property will vest beyond a life in being plus twenty-one years, the Court must find that the interest violates the rule against perpetuities.[65]   In the Escrow Agreement, the parties entered into a general forbearance agreement which precludes the parties from bringing *any* action "including but not limited to an action for foreclosure."[66]  The only triggering event that releases the parties from the forbearance agreement is Defendant's failure to distribute Lot Proceeds in accordance with the Agreement.[67]  The Escrow Agreement, however, fails to provide a date by which Defendant is required to sell lots nor does it provide an affirmative obligation on Defendant to sell lots.[68]  In effect, Defendant could never sell any lots and remain in compliance with the Escrow Agreement in perpetuity, preventing Plaintiffs' rights from ever vesting.  Even Defendant acknowledges this by claiming that Plaintiffs' have failed to state a condition precedent to bringing this action.[69]  Such a result clearly violates the rule against perpetuities and the forbearance agreement is void *ab initio*.[70]

---

[63] *Teeven v. Kearns*, 1993 WL 1626514, at *3 (Del. Super. Ct. Dec. 3, 1993) (citing II Victor B. Wooley, PRACTICE IN CIVIL ACTIONS AND PROCEEDINGS IN THE LAW COURTS OF THE STATE OF DELAWARE § 1353 (1906)).

[64] *See Reserves Dev. LLC*, 2011 WL 4639817.

[65] *Id.* (citing *Stuart Kingston, Inc.*, 596 A.2d at 1383.).

[66] Escrow Agreement, Ex. G. to Compl., Item 1 (Sept. 23, 2015).

[67] *Id.* Coincidently, the parties are not released from the forbearance agreement if Defendant fails to distribute DelDOT bond refunds. *See id.* The Court has ruled that "lot proceeds," as that term is used in the Escrow Agreement, does include DelDOT bond refunds.

[68] *Id.*

[69] *See* Answer to Compl., Item 6, at ¶14 (Oct. 30, 2015).

[70] *See Stuart Kingston, Inc.*, 596 A.2d at 1383.

Even in the absence of the forbearance agreement,[71] the remaining contract violates the rule against perpetuities and is also void *ab initio*. The clear intent of the parties to the Escrow Agreement is that payments would be made from Lot Proceeds. The parties modified the rights and obligations under the Second Mortgage based on this understanding. As stated above, however, the parties did not expressly provide for a date by which Defendant was required to sell lots nor did they provide an affirmative obligation on Defendant to sell lots.[72] Even without the forbearance agreement, the parties are prevented from bringing an action under the Escrow Agreement until Defendant fails to distribute Lot Proceeds in accordance with the Agreement,[73] an event that is not certain to occur. Such a result clearly violates the rule against perpetuities and the Escrow Agreement is void *ab initio*.[74]

This is an *in rem* action brought by Plaintiff to foreclose upon the Second Mortgage due to Defendant's failure to deliver $119,383.75, a refund of a DelDOT bond, to the escrow agent for disbursement in breach of the Escrow Agreement.[75] A *scire facias sur* mortgage action is an *in rem* proceeding used to foreclose a mortgage and Delaware Courts recognize only "the defenses of payment, satisfaction, or a plea in avoidance against a *scire facias sur* action."[76] In the instant matter, the only defenses Defendant alleges are those based on the forbearance agreement: waiver, release, and failure of a condition precedent.[77] Having determined that the forbearance agreement is void *ab initio*, these defenses lack merit. Defendant does not dispute

---

[71] In making reference to the Escrow Agreement in the absence of the forbearance agreement, the Court does not rule on whether the forbearance agreement can be severed from the Escrow Agreement.

[72] *Id.*

[73] The Escrow Agreement also provides that DelDOT bond refunds are to be distributed in accordance with the Agreement, however it is uncertain whether there will be any more DelDOT bond refunds to be distributed.

[74] *See Stuart Kingston, Inc.*, 596 A.2d at 1383.

[75] *See* Compl., Item 1 (Sept. 23, 2015).

[76] *JPMorgan Chase Bank v. Hopkins*, 2013 WL 5200520, at *2 (Del. Super. Ct. Sept. 17, 2013) (citing *Wells Fargo Bank, N.A. v. Willford*, 2011 WL 5822630, at *3 (Del. Super. Ct. Nov. 17, 2011); *First Fed. Sav. & Loan Assn. of Norwalk v. Falls*, 1986 WL 9916, at *1 (Del. Super. Ct. Sept. 9, 1986)). .

[77] Answer to Compl., Item 6, at ¶14 (Oct. 30, 2015).

13

that they have failed to make timely payments under the Second Mortgage, therefore, Plaintiff has a statutory and common law right to foreclose on the property pursuant to the Second Mortgage.

## V. CONCLUSION

For the reasons stated above, Plaintiffs' Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

_____/s/_____
**M. Jane Brady**
Superior Court Judge

14