# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| APPLIANCE RECYCLING CENTERS OF AMERICA, INC., | ) ) ) | |
| Plaintiff, | ) ) | C.A. No. N18C-08-272 EMD |
| v. | ) ) | |
| RECLEIM LLC, | ) ) | |
| Defendant. | ) ) | |

Submitted: December 1, 2020
Decided: March 29, 2021

*Upon Defendant's Motion to Dismiss*
***GRANTED***

Geena Khomenko George, Esquire, The Law Office of Geena Khomenko George LLC, Wilmington, Delaware, Michael H. Rosenthal, Esquire, Lurie & Broudy LLC, Exton, Pennsylvania. *Attorneys for Plaintiff Appliance Recycling Centers of America, Inc.*

Travis S. Hunter, Esquire, Alexandra M. Ewing, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware. *Attorneys for Defendant Recleim LLC.*

**DAVIS, J.**

## I.      INTRODUCTION

This civil action arises out of a contract. Plaintiff Appliance Recycling Centers of America, Inc. ("ARCA") has brought a single breach of contract claim against Defendant Recleim, LLC ("Recleim") for breach of contract. ARCA alleges that Recleim solicited ARCA's customer in violation of the agreement between the parties. ARCA alleges that Recleim solicited ARCA's customer when Recleim's subcontractor filed a lawsuit against ARCA for violations of the Lanham Act.

Upon motion, the Court dismissed ARCA's initial complaint with leave to file an amended complaint. ARCA filed its amended complaint (the "Amended Complaint") on February 26, 2019.

Recleim has filed a motion to dismiss the Amended Complaint (the "Present Motion"). Recleim contends that ARCA did not correct fundamental flaws with ARCA's breach of contract claim. In support, Recleim makes four arguments: (i) the Amended Complaint pleads no facts regarding Recleim's involvement with a separate suit (the "Key Action") filed by Key Recycling, LLC ("Key") against ARCA; (ii) ARCA fails to properly plead a breach of contract against Recleim; (iii) ARCA fails to plead damages; and (iv) the *Noerr-Pennington* doctrine bars ARCA from interfering with Key's right to bring suit against ARCA.

For the reasons set forth below, the Present Motion is **DENIED**. The Court, however, will initially limit discovery to the issue of whether Key acted as Recleim's agent when filing the Key Action. After that limited discovery is complete, the Court will readdress the issue of agency.

## II.     BACKGROUND

### A. FACTUAL BACKGROUND

Recleim is a Delaware limited liability company[1] that provides recycling, resource recovery, and disposal of refrigerators, air conditioning units and other large appliances.[2] Recleim has its principal place of business in Atlanta, Georgia.[3] ARCA is a Minnesota corporation with its principal place of business in Minneapolis, MN.[4] ARCA is also a competitor of Recleim.

---

[1] Am. Compl. ¶ 2.
[2] *Id.* ¶ 11.
[3] *Id.* ¶ 2.
[4] *Id.* ¶ 1.

On August 14, 2017, Recleim and ARCA entered into an asset purchase agreement (the "Letter Agreement"), pursuant to which Recleim acquired some of the assets of ARCA's subsidiary.[5] Paragraph 6 of the Letter Agreement has a non-solicitation provision:

> Non-Solicitation Agreement. Recleim and Recleim PA, jointly and severally, covenant and agree that, for three years following the Closing Date, they will not individually or collectively solicit customers of ARCA for the purpose of providing or selling refrigerator recycling services.[6]

On December 12, 2017, ARCA filed a complaint with this Court[7] arguing that Recleim had violated "Section 6 of the Letter Agreement by soliciting ARCA's customers."[8] On March 28, 2018, Recleim and ARCA entered into a settlement agreement (the "Settlement Agreement").[9] Under the Settlement Agreement, ARCA granted Recleim and its "agents, and representatives" a release from,

> …any and all actions, causes of action, suits, disputes, delays, trespasses, damages, liabilities, claims, proceedings and demands of every kind and character, direct and indirect, known or unknown, individual or class asserted or unasserted, fixed or contingent, accrued or unaccrued in law or in equity, actionable in any jurisdiction worldwide that [ARCA] now ha[s], had at any time heretofore, or hereafter may have against [Recleim and its agents and representatives], or any of them, resulting from, arising out of, or relating to Recleim's purchase of [ARCA's subsidiary] including without limitation . . . any claims or causes of action that were asserted or could have been asserted against [Recleim and its agents and representatives] in the Delaware Action [Case No. N17C-12-155 ALR] . . . .[10]

ARCA and Recleim expressly released all known and unknown claims.[11]

---

[5] *Id.* ¶ 3, Ex. B.

[6] *Id.* ¶ 3, Ex. B at ¶ 6.

[7] Case No. N17C-12-155 ALR.

[8] Am. Compl. ¶ 6.

[9] *Id.* ¶ 7; *see also* Def. Mot. to Dismiss at Ex. 2. Although not an exhibit to the Amended Complaint, ARCA pleads the existence of the existence of the settlement as part of its allegations in the Amended Complaint.

[10] Settlement Agreement at ¶ 4.

[11] *Id.* at ¶ 4.1.

In 2016, Recleim and ARCA bid on a project for PECO Energy Co. ("PECO").[12] Recleim bid on the project with a subcontractor Key, LLC ("Key"). Key is a Pennsylvania LLC with its principal place of business in Pottstown, PA. PECO awarded ARCA the project.

According to the Amended Complaint, Recleim subsequently contacted Key and authorized Key (as Recleim's agent) to file suit against ARCA.[13] Then, on April 18, 2018, Key sued ARCA in the United States District Court for the Eastern District of Pennsylvania (the "Key Action").[14] In the Key Action, Key argued that ARCA violated the Lanham Act. Specifically, Key alleged that ARCA engaged in anti-competitive behavior because ARCA deceived customers and underbid competitors in recycling projects by failing to comply with federal environmental regulations in its disposal of appliances.[15] Key noted that ARCA had misrepresented to PECO that it complied with environmental regulations in order to win its bid.[16] The Key Action survived ARCA's motion to dismiss.[17] ARCA subsequently prevailed at trial in the Key Action.[18]

ARCA contends that Key has a "well-established" agency relationship with Recleim prior to filing the Key Action.[19] The Amended Complaint alleges that Recleim authorized Key to file the Key Action.[20] ARCA claims that the Key Action is Recleim's attempt to disrupt ARCA's business relationship with PECO and cause PECO to discontinue using ARCA's services.[21]

---

[12] Am. Compl. ¶ 7.
[13] *Id.* ¶ 9.
[14] *See Id.* ¶ 9, Ex. C.
[15] *See Id.*, Ex. C at ¶¶ 38–77.
[16] *Id.*
[17] *Key Recycling, LLC v. Appliance & Recycling Ctrs. of Am.*, 2018 WL 4615856, at *5 (E.D. Pa.). ARCA has advised the Court that ARCA prevailed in the Key Action.
[18] D.I. No. 42.
[19] Am. Compl. ¶ 14.
[20] *Id.* ¶ 13.
[21] *Id.*

4

The Amended Complaint makes multiple allegations regarding the principal-agent relationship between Key and Recleim.[22] ARCA contends that the Key Action is a "solicitation" under the terms of the Agreement because the Key Action is "…an effort to gain business from PECO at ARCA's expense."[23]

## B. PROCEDURAL BACKGROUND

ARCA filed a complaint against Recleim on September 1, 2017 (the "Complaint").[24] ARCA alleges that Recleim breached the Letter Agreement by soliciting PECO through Key, Recleim's agent. ARCA argues that Recleim solicited PECO because its agent Key filed a lawsuit against ARCA so that PECO would terminate ARCA's contract and award the contract to Recleim and Key. Finally, ARCA argues that it is entitled to damages, attorneys' fees under the Letter Agreement, and requests a trial by a jury.

Recleim moved to dismiss (the "Original Motion") the Complaint on November 1, 2018.[25] On December 3, 2018, ARCA filed their opposition to the Original Motion.[26] On December 14, 2018, Recleim filed a reply.[27] The Court held a hearing on the Original Motion on February 4, 2019.[28] At the end of the hearing, the Court granted the Original Motion without prejudice.[29] The Court gave ARCA twenty (20) days to amend the Complaint.[30]

On February 26, 2019, ARCA filed the Amended Complaint.[31] In the Amended Complaint, ARCA makes additional agency allegations, demands a jury trial, and withdraws its demand for attorneys' fees under the Letter Agreement. Recleim filed the Present Motion on

---

[22] *Id.* ¶¶ 9, 13-14, 16-17, and 19.
[23] *Id.* ¶ 18.
[24] D.I. No. 1.
[25] D.I. No. 8
[26] D.I. No. 15.
[27] D.I. No. 16.
[28] D.I. No. 21.
[29] D.I. No. 22.
[30] D.I. No. 42.
[31] D.I. No. 23.

April 1, 2019.[32] Recleim raises essentially the same arguments it made in the Original Motion. On May 10, 2019, ARCA filed their opposition to the Original Motion. On May 28, 2019, Recleim filed a reply.[33] The parties then asked the Court to stay any further action on the Present Motion until the conclusion of the Key Action.[34] The Court stayed action on the Present Motion on July 16, 2019.[35]

On July 7, 2020, ARCA's counsel informed the Court that ARCA prevailed in the Key action trial.[36] ARCA did not provide whether any discovery in the Key Action uncovered a principal-agent relationship between Reclaim and Key, or that the Key Action was determined to be a shame lawsuit.[37] ARCA did not ask for further briefing. ARCA just asked the Court to lift the stay and issue a ruling on the Present Motion.[38] On November 30, 2020, the Court lifted the stay and took the Present Motion under advisement.[39]

### III. STANDARD OF REVIEW

Upon a motion to dismiss, the Court (i) accepts all well-pleaded factual allegations as true, (ii) accepts even vague allegations as well-pleaded if they give the opposing party notice of the claim, (iii) draws all reasonable inferences in favor of the non-moving party, and (iv) only dismisses a case where the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances.[40] However, the court must "ignore conclusory allegations that lack specific supporting factual allegations."[41]

---

[32] D.I. No. 28.
[33] D.I. No. 32.
[34] D.I. No. 35.
[35] D.I. No. 36.
[36] D.I. No. 42.
[37] *Id*.
[38] *Id*.
[39] D.I. No. 43.
[40] *See Central Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 227 A.3d 531, 536 (Del. 2011); *Doe v. Cedars Academy,* No. 09C-09-136, 2010 WL 5825343, at *3 (Del. Super. Oct. 27, 2010).
[41] *Ramunno v. Crawley,* 705 A.2d 1029, 1034 (Del. 1998).

6

## IV.    DISCUSSION

### A.  ARCA HAS, AT THIS TIME, SUFFICIENTLY PLED A BREACH OF THE LETTER AGREEMENT.

Both parties agree that the Settlement Agreement disclaims liability for Recleim's conduct before March 2018.  At issue here is only the activity after the Settlement Agreement.

At the motion to dismiss stage, a plaintiff must "plead[] facts that support an inference of agency."[42] Actual authority is authority which a principal expressly or implicitly grants to an agent.[43]Apparent authority is authority which a principal knowingly or negligently permits an agent to exercise, or which the principal holds the agent out as possessing.[44] "In order to hold a defendant liable under apparent authority, a plaintiff must show reliance on indicia of authority originated by principal, and such reliance must have been reasonable."[45]  The Court will deny the Present Motion because, at this early stage, ARCA has pled a claim for breach of contract.  The Court understands Recleim's arguments but finds, for now, that Reclaim takes too narrow a position on defining Recleim and solicitation.

Recleim argues that the Letter Agreement's non-solicitation clause binds only "Recleim and Recleim PA," not their agents or other related parties.  In addition, Recleim argues that ARCA has not pleaded facts alleging any agency relationship between Recleim and Key.  Recleim cites several cases, which discuss agency relationships between parent and subsidiary companies to support its contention.

In response, ARCA argues that whether an agency relationship exists is a question of fact that the Court should not decide at the motion to dismiss stage.[46]  ARCA argues that Key is

---

[42] *Eni Holdings v. Kbr Group Holdings*, 2013 WL 618326 at *13 (Del. Ch. Sept. 27, 2013).
[43] *Billops v. Magness Constr. Co.,* 391 A.2d 196, 197 (Del.1978).
[44] *Henderson v. Chantry,* 2002 Del. Ch. LEXIS 14, at *14, 2002 WL 244692 (Del. Ch. Feb. 5, 2002).
[45] *Billops,* 391 A.2d at 198.
[46] *Fisher v. Townsend, Inc.*, 695 A.2d 53, 61 (Del. 1997).

7

Recleim's agent because Key and Recleim have worked together for a long period of time. In addition, ARCA argues that Key, in the Key Action, described itself as in an agency relationship with Recleim because Key stated that 1) Recleim is uniquely situated to service PECO, and 2) Key would have provided services to PECO as part of Recleim's bid to PECO.[47] Finally, ARCA alleges that Recleim authorized Key, as its agent, to file the Key Action.[48]

The Court finds that, at this stage of the proceedings, ARCA has sufficiently plead facts to support an inference that Key is Recleim's agent. Delaware follows the Restatement (Second) of Agency[49] in determining whether two parties have formed a principal and agent relationship. One of the factors listed in the Restatement is "whether or not the parties believe they are creating the relation of master and servant."[50] The factual record has not been developed on this issue. The Amended Complaint does make several agency allegations that would satisfy the standard.

The Court admits it is somewhat unpersuaded by ARCA's claims regarding the agency relationship. Key identifies itself as a "supporting participant" to Recleim's bid to PECO in the Key Action, rather than as an agent. In addition, Recleim never held itself out as Key's principal. ARCA did not plead any fact supporting an indicium of control that Recleim exerts over Key. Finally, ARCA and Key engaged in discovery in the Key Action, but ARCA does not allege any facts discovered in that litigation that show Recleim and not Key was the actual party-in-interest. In similar cases, courts have dismissed claims of agency relationships where the

---

[47] Am. Compl. ¶¶ 11, 12.
[48] *Id*. ¶ 9.
[49] Restatement (Second) of Agency § 220 (1958).
[50] *Id.*

8

plaintiff alleged that a single contractual provision showed control.[51] However, the existence of an agency relationship is a factual issue.

The Court finds, for now, that ARCA has sufficiently plead the existence of an agency relationship between Key and Recleim as to the filing of the Key Action. Recleim argues that the Letter Agreement only applies to Recleim and Recleim PA. However, a corporation like Recleim can not avoid responsibility under the Letter Agreement by using an agent. A corporation is an artificial being.[52] As such, a corporation can only act through its agents.[53] At this stage of the action, ARCA has plead agency and put Recleim on notice of the claim.

ARCA also argues that it has sufficiently pleaded a claim for a breach of the non-solicitation provision of the Letter Agreement. ARCA argues that Black's Law Dictionary defines "solicit" to mean "an attempt or effort to gain business." Key, acting as Recleim's agent, has purportedly solicited PECO because Key has attempted to gain ARCA's business with PECO. Specifically, ARCA argues that in the Key Complaint, Key alleged that ARCA violated environmental regulations and misrepresented its services to PECO, so that the court would order ARCA to stop providing its services to PECO. Then, Key and Recleim would be able to gain PECO's business.

In response, Recleim argues that filing a lawsuit is not solicitation. Recleim cites several cases that have followed narrow interpretations of restrictive covenants to avoid restricting parties' contractual freedom.[54] In addition, Recleim argues that the non-solicitation provision only prohibits Recleim from soliciting ARCA's customers "for the purpose of

---

[51] *See WaveDivision Holdings, LLC v. Highland Capital Mgmt., L.P.,* 49 A.3d 1168, 1177 (Del. 2012) (finding that a plaintiff did not sufficiently allege an agency relationship when the plaintiff cited a single provision in a contract indicating control).

[52] *In re Dole Food Co., Inc. Stockholder Litig.*, 110 A.3d 1257, 1261 (Del. Ch. 2015).

[53] *See E. Shore Natural Gas Co. v. Glasgow Shopping Ctr.*, 2007 WL 3112476, at *3 (Del. Super. Oct. 3, 2007).

[54] *See, e.g.*, *Concord Steel, Inc. v. Wilm. Steel Processing Co.*, 2008 WL 902406, at *6 (Del. Ch.) ("Delaware courts construe restrictive covenants narrowly as written.").

providing or selling refrigerator recycling services." Recleim argues that the Key Action was filed to prevent PECO from violating the law, rather than to stop ARCA from selling its recycling services. Finally, Recleim argues that the *Noerr-Pennington* doctrine allows Key to exercise its right to file an action in front of a court.

The *Noerr-Pennington* doctrine was established by the U.S. Supreme Court in two antitrust cases.[55] The doctrine holds "that liability cannot be imposed for damage caused by inducing legislative, administrative, or judicial action."[56] In the *Noerr* and *Pennington* cases, the U.S. Supreme Court found that the First Amendment allowed competitors to influence government action regardless of their motive. For example, competitors could file an action against one another for violations of federal laws, even if the competitors' motive in filing the action was anti-competitive or unethical. The Supreme Court limited its finding by stating that influencing government action is impermissible when it "is a mere sham to cover what is actually nothing more than attempt to interfere directly with the business relationships of a competitor."[57] A litigant must make more than conclusory allegations that an opposing party has filed sham litigation against the litigant.[58] This is important to protect the opposing party's rights to petition the government.[59] Courts have also extended the application of the *Noerr-Pennington* doctrine from business competitors only filing claims based on federal laws to business

---

[55] Established by the U.S. Supreme Court in two cases- *Eastern R.R. President's Conference v. Noerr Motor Freight, Inc.* ("Noerr"), 365 U.S. 127, 81 S. Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mine Workers of America v. Pennington*, 381 U.S. 657, 85 S. Ct. 1585, 14 L.Ed.2d 626 ("Pennington") (1965).

[56] *Brownsville Golden Age Nursing Home, Inc. v. Wells*, 839 F.2d 155, 160 (3d Cir. 1988).

[57] *Noerr,* 365 U.S. at 144, 81 S. Ct. at 533.

[58] *See id.*

[59] *City of Newark v. Delmarva Power & Light Co.,* 497 F. Supp. 323, 325 (D. Del. 1980) ("The Court applied the sham exception to the Noerr-Pennington doctrine *in California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S. Ct. 609, 30 L.Ed.2d 642 (1972). It was alleged in this case that a group of trucking companies had engaged in a joint campaign of administrative and judicial harassment to prevent a rival corporation from obtaining operating rights. The Court ruled that this behavior was not a genuine attempt to influence government policy, but rather a conspiracy to deny competitors meaningful access to the agencies and courts. 404 U.S. 515-16, 92 S. Ct. at 614. In reaching this conclusion, the Court noted a variety of other forms of unethical conduct that would corrupt the adjudicatory process, and which would go unprotected from antitrust liability: perjury, misrepresentation, fraud, bribery, and so on. 404 U.S. at 512-13, 92 S. Ct. at 612-613.").

competitors filing claims based on state common law claims.[60] In a footnote, the Court of Chancery applied the *Noerr-Pennington* doctrine.[61]

In this case, Key filed a claim against ARCA for violating the federal Lanham Act. The Lanham Act of 1946 allows competitors to file suits against one another for deceptive practices or breaches of other laws to prevent unfair competition. Specifically, Key alleged that ARCA made misrepresentations that it followed federal environmental regulations, even though employees of Key personally observed ARCA disregarding the requirements in the regulations. ARCA has not pleaded any facts that suggest that the Key Action is sham litigation. In fact, the Key Action survived a motion to dismiss and proceeded to trial.

Key may be protected by the *Noerr-Pennington* doctrine because Key has a First Amendment right to file the Key Action, regardless of Key's motive in filing the suit. However, ARCA is not filing suit against Key. ARCA is contending that Key (which may be protected by the *Noerr-Pennington* doctrine) acted as an agent to disrupt ARCA's business relationship with PECO so that Recleim could solicit PECO. In essence, ARCA alleges Recleim and Key conspired to commit a breach of contract claim. Recleim is not protected by the *Noerr-Pennington* doctrine for actions in violation of the Letter Agreement.

The Court therefore finds that Recleim's definition of solicitation is too narrow. The Court does not find that, as a matter of law, ARCA's theory of solicitation through the Key Action is barred. The Court will, at this stage, allow ARCA to proceed on its theory of solicitation.

---

[60] *Id.* ("Given the constitutional basis of the Noerr Pennington doctrine it is apparent that activity which it shields from federal antitrust liability is also protected from claims based on state common law. To hold otherwise would be to permit state common law to supersede the right to petition created by the First Amendment and applied to the states by the Fourteenth Amendment.").

[61] *Salem Church (Delaware) Assocs. v. New Castle City*, 2006 WL 4782453, at *13 (Del. Ch. Oct. 6, 2006) (finding that the Court of Chancery would not inquire into officials ulterior motives in enacting a state regulation because the regulation bolstered environmental and traffic safety).

## A. ARCA IS NOT ENTITLED TO A JURY TRIAL

ARCA is not entitled to a trial by jury or attorney's fees under the Letter Agreement. In *The Data Centers, LLC v. 1743 Holdings LLC*,[62] the Court granted a plaintiff's motion to strike a jury demand because the jury waiver provision was clear and unambiguous and applied to the allegations at issue in the case. The Letter Agreement has a section entitled:

> WAIVER OF JURY TRIAL. THE PARTIES HERETO IRREVOCABLY WAIVE THEIR RESPECTIVE RIGHTS TO TRIAL BY JURY OF ANY CAUSE OF ACTION, CLAIM, COUNTERCLAIM OR CROSS-COMPLAINT IN ANY ACTION OR OTHER PROCEEDING BROUGHT BY ANY PARTY AGAINST ANY OTHER PARTY OR PARTIES WITH RESPECT TO ANY MATTER ARISING OUT OF, OR IN ANY WAY CONNECTED WITH OR RELATED TO THIS AGREEMENT OR ANY PORTION OF THIS AGREEMENT, WHETHER BASED UPON CONTRACTUAL, STATUTORY, TORTIOUS OR OTHER THEORIES OF LIABILITY, EACH PARTY HERETO REPRESENTS THAT IT HAS CONSULTED WITH COUNSEL REGARDING THE MEANING AND EFFECT OF THE FOREGOING WAIVER OF ITS RIGHT TO A JURY TRIAL.[63]

This "Waiver of Jury Trial" section clearly and unambiguously states that the parties waive their right to a jury trial as to any claim arising out of, or in any way connected with or related to the Letter Agreement.

ARCA's claims arise out of the Letter Agreement because ARCA claims that Recleim solicited PECO in violation of paragraph 4 of the Letter Agreement. Moreover, ARCA did not even address the waiver of the jury trial in opposing Recleim's motions to dismiss. The Court, therefore, holds that ARCA waived its right to a jury trial on the Letter Agreement.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Present Motion. The Court, however, is concerned that notice pleading here could lead to costly litigation that consist of a "fishing expedition." Accordingly, the Court will initially limit the scope of discovery under Civil Rule

---

[62] 2015 WL 6662107, at *7 (Del. Super. Oct. 27, 2015).
[63] Am. Compl., Ex. B at ¶ 7.d.

26(b)(1). For ninety (90) days ("Phase I") from the date of this decision, the Court will allow discovery **ONLY** on the issue of whether Key acted as Recleim's agent in filing the Key Action. At the end of Phase I, the parties shall notify the Court and the Court will hold a hearing on the status of discovery, and on the issue of Key's purported agency relationship with Recleim when filing the Key Action.

The Court **STRIKES** ARCA's jury trial demand.

**IT IS SO ORDERED**

Dated: March 29, 2021
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge

cc:     File&ServeExpress

13