**LIMESTONE REALTY CO., a Delaware corporation, Plaintiff,**

v.

**TOWN AND COUNTRY FINE FURNI-TURE & CARPETING, INC., a Delaware corporation, Goldsborough Company, a Delaware corporation, and Emmett S. Hickman Co., a Delaware corporation, Defendants.**

Court of Chancery of Delaware.

New Castle.

July 22, 1969.

Edward B. Maxwell 2nd, of Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff.

Andrew B. Kirkpatrick, Jr., and Walter L. Pepperman, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendant Town and Country Fine Furniture & Carpeting, Inc.

Rodman Ward, Jr., of Prickett, Ward, Burt & Sanders, Wilmington, for defendant Goldsborough Company.

Robert W. Wakefield, of Walker, Miller & Wakefield, Wilmington, for defendant Emmett S. Hickman Co.

SHORT, Vice Chancellor:

In this action plaintiff, Limestone Realty Co. (Limestone) seeks recission of a written agreement purporting to release Town and Country Fine Furniture & Carpeting, Inc. (Town) from its obligations under a lease. In the alternative, Limestone seeks damages against Goldsborough Company (Goldsborough) and Emmett S. Hickman Co. (Hickman), real estate agents, resulting from their unauthorized transmission of the release to Town. These defendants have cross-claimed against each other and against Town. Town, Goldsborough and Limestone have moved for summary judgment. This is the decision on those motions.

These are the facts: On August 30, 1962 Town entered into a lease with Limestone for the rental of a building at 4528 Kirkwood Highway, Wilmington, for a term of years ending on August 31, 1969. The lease was negotiated by Hickman which, according to agreement with Limestone, was entitled to commissions on rentals for the full term of the lease. In 1966 Town, having decided to construct its own building, began to look for someone to take over as tenant of the leased premises. On July 6, 1967 Town moved from the 4528 location to its new store at 4507 Kirkwood Highway. At or about that time Town placed a "For Rent" sign on the leased premises directing interested persons to call at its new location. Shortly thereafter a representative of Goldsborough, in the company of Albert Lehman, president of Town, showed the 4528 premises to a prospective tenant named Hampton Sales Company. On July 26, 1967 a representative of Goldsborough wrote Town proposing to release Town from the obligations under its lease "provided that the landlord and the new tenant, Hampton Sales Company, Inc. can agree upon the terms of a satisfactory lease," and provided further that Town would agree to certain stated conditions. No agreement resulted from this offer. On or about August 31, 1967 Town received from Goldsborough an unexecuted form of agreement which provided that Town's lease was to be canceled as of October 1, 1967 "provided that Limestone Realty Co. has entered into a Lease satisfactory to it with another tenant on or before October 1, 1967." This document also provided for Town's agreement to pay Hickman rental commissions for the balance of the term

and for Town to transfer its sign located on the leased premises to any new tenant. Shortly after receipt of this document Goldsborough notified Town that the contemplated lease with Hampton had fallen through.

On September 19, 1967 Harry Tingle, an officer of Hickman, forwarded, under covering letter, to Town the form of release which is here involved.[1] The document bore the ink signatures of the president and secretary of Limestone and the seal of that corporation. It recited that Town's lease was canceled "as of August 15, 1967" and that Town should have no further obligations under the lease except to pay Hickman the rental commissions for the balance of the term and that Town should transfer "without consideration to the new tenant, COLFAX APPLIANCE CO., INC. its sign presently located on the premises."[2] On September 20, 1967 Town received Tingle's letter and the agreement of release. Lehman immediately went to his attorney's office and there signed the agreement on behalf of Town. He thereafter called Tingle and advised him that the proposal in Tingle's covering letter to discount the commission was satisfactory and that he was ready and willing to make out a check for the amount of the discounted commission. At the same time, however, Lehman advised Tingle that since the agreement released Town as of August 15, 1967 Town was entitled to a refund totaling $1462.50 for one and one-half months rent. Lehman advised Tingle that he would exchange his check for Limestone's check for the refund. Tingle replied that he would call Lehman back when he could get in touch with Limestone. On September 21, 1967 Tingle called Town and advised it that the "deal was off." Town has not paid Hickman the commissions called for by the release nor transferred the sign to Colfax or to any new tenant.

It is clear from the depositions that at the time the release was sent to and received by Town both Goldsborough and Hickman believed that a new tenant had been found. Town also assumed such to be the fact. That the belief was contrary to fact is clear. Accordingly, Limestone, Goldsborough and Hickman argue that there was a mutual mistake of material fact giving rise to a right to rescission. Town argues that the mistake, if any, was the unilateral mistake of Limestone in negligently placing the release in the hands of Goldsborough. Hickman also contends that Lehman's acceptance of the offer of the release was conditioned upon Limestone's refunding of rent and, therefore, constituted a counteroffer which was not accepted by Limestone. Since I am satisfied that Limestone is entitled to the relief sought under settled principles of agency and contract law it is unnecessary to consider these contentions.

█ Town argues that it relied on apparent authority in Hickman to deliver the release. Assuming that Limestone's acts and conduct were such as to warrant the appearance of authority in Hickman it is nevertheless the law that one dealing with an agent does so at his peril and must bear the burden of determining for himself the existence or non-existence of the agent's authority to act in the premises. Zeeb v. Atlas Powder Co., 32 Del.Ch. 486, 87 A.2d

---

1. The body of the covering letter is as follows:
   "I enclose herewith agreement regarding the lease commission at 4528 Kirkwood Highway.
   "We would be willing to discount the lease commission if paid in full to the amount of $800.00.
   "Won't you please advise me if you would be interested in the discount figure."

2. I think it is clear from the testimony given on deposition by representatives of Goldsborough and Hickman that the form of release signed by Limestone's officers came into Hickman's possession through error. The executed document was entrusted to Goldsborough by Limestone and upon Hickman's request for a copy thereof Goldsborough's representative photocopied the instrument and in error delivered the original to Hickman's representative.

123; Arthur Jordan Piano Co. v. Lewis, 4 W.W.Harr. 423, 154 A. 467. A person dealing with an agent must act with ordinary prudence and reasonable diligence, and if he knows or has good reason for believing under all the facts and circumstances that the agent is exceeding his authority he is duty bound to ascertain the extent of the authority. Arthur Jordan Piano Co. v. Lewis, supra. He is not entitled to assume the existence of any extraordinary state of facts in order to bring the act of the agent within the scope of his apparent authority. 19 Am.Jur.2d 592.

■ Considering the circumstances which existed and were known by Town when it received the release from Tingle I am satisfied that its reliance upon Hickman's apparent authority was not in the exercise of reasonable prudence. The effective date, August 15, 1967, set forth in the release was more than five weeks prior to Town's receipt of the instrument. Within three weeks before its receipt Town had received a form of release with an effective date of October 1, 1967 and notification that negotiations with Hampton had fallen through. Lehman knew, as he testified, that Limestone would not release Town until a new tenant was obtained. Town's "For Rent" sign remained on the premises and it retained the keys thereto. No new tenant had taken possession. Neither is there anything in the record to indicate any activity on the premises which might have been considered as preparation for occupancy by a new tenant. That the August 15 effective date aroused suspicion in the minds of Town's officers is clear. Lehman testified that he and Irving Susson, the vice-president of Town, thought the August date was "strange," that he "was glad that we had gotten off the hook," and that he didn't care what was in the release, his only interest in the August 15 date being that he wanted a refund of rent. Susson testified the August 15 date struck him as "odd." The nature of Tingle's covering letter of September 19 was also such as to arouse suspicion. Nothing therein could be construed as a representation that the release was submitted to Town on behalf of Limestone. On the contrary, the letter referred to the enclosure as "agreement regarding the lease commission," as to which Hickman had a personal interest, and its sole context pertained to such commission. By reason of the existing circumstances and suspicion of its officers concerning the effective date of the release Town, if not legally chargeable with notice that Hickman had exceeded its authority, was at least placed upon inquiry notwithstanding that the agent may have had apparent authority. 19 Am.Jur.2d 592. A simple telephone call would have revealed Hickman's actual authority.

■ But in spite of the circumstances Town made no inquiry. In spite of Lehman's suspicions he immediately took the release to his attorney and executed it thereby accepting an offer which he should have known was unintended and on its face was too good to be true. Such an offer is not susceptible of acceptance. Anthony P. Miller, Inc. v. Wilmington Housing Authority (D. Del.), 179 F.Supp. 199; Universal Transistor Products Corp. v. United States. D.C., 214 F.Supp. 486; Lange v. United States, for Use of Wilkinson, 120 F.2d 886; Rushlight Automatic Sprinkler Co. v. City of Portland, 189 Or. 194, 219 P.2d 732. The cited cases deal with errors or mistakes made by bidders on construction contracts. Town would no doubt argue that the principle of such cases is inapplicable here. But I am satisfied that it does apply for it is based on the concept that an offeree who knows or should know that the offer made is unintended by the offeror cannot by a purported acceptance create a binding contract, there being no meeting of the minds. Williston on Contracts, 3rd Ed. § 94.

■ Town argues that Limestone is not entitled to the relief sought because its negligence precipitated the events which culminated in Town's acceptance of the release. But this contention is without merit. First of all, Town, as already in-

dicated, was not entitled to rely on Hickman's apparent authority to deliver the instrument. Therefore, assuming Limestone's conduct to have been negligent, such negligence could not excuse Town for failing to determine the extent of Hickman's actual authority. Moreover, where, as here, neither fraud nor bad faith is charged and no prejudice has resulted the relief requested should be granted notwithstanding plaintiff's negligence. Compare, Home Life Insurance Co. v. McCarns, 25 Del.Ch. 220, 16 A.2d 587. Town has in no way changed its position as a result of the alleged negligence. It has neither paid Hickman nor transferred its sign as required by the release. Rescission will merely restore the status quo.

The motions of Limestone, Goldsborough and Hickman for summary judgment are granted. The motion of Town for summary judgment is denied.

An appropriate order, on notice, may be submitted.