**FINNEGAN CONSTRUCTION COMPANY, Plaintiff,**

v.

**ROBINO–LADD COMPANY and the Shelter Group, Inc., Defendants.**

Superior Court of Delaware, New Castle.

Submitted Jan. 9, 1976.

Decided Feb. 24, 1976.

John S. Grady of Bader, Dorsey & Kreshtool, Wilmington, for plaintiff.

W. L. Pepperman, II of Morris, Nichols, Arsht & Tunnell, Wilmington, for defendants.

STIFTEL, President Judge.

Plaintiff Finnegan Construction Co. is a subcontractor who performed work for defendant Robino-Ladd Co., the general contractor on the premises (an apartment complex) owned by defendant The Shelter Group, Inc. The Shelter Group, Inc. is a wholly-owned subsidiary corporation of Robino-Ladd. Plaintiff completed work on the site by December 10, 1974. Defendant has not paid for any work. Plaintiff, on February 28, 1975, filed a complaint and statement of claim for a mechanic's lien against the two named defendants.

Defendant Shelter Group, Inc. has filed a motion to dismiss because of improper service. The facts are that on March 7, 1975, upon notice of a change of address, the deputy sheriff went to 1 Pike Creek Center to the office of the registered agent of Shelter Group, Inc.—Frank A. Robino. The deputy sheriff advised the receptionist that he wished to make service of process on the Shelter Group, Inc. The receptionist spoke to someone on the phone and told the deputy sheriff that a person to accept service would be back shortly. A few minutes later, a man appeared and identified himself as Les Schere. He took the complaint, read it entirely, and said "Okay, I can take it."

The deputy sheriff considered Mr. Schere as an acceptable person to receive service. In his affidavit, the deputy sheriff further claimed that 1 Pike Creek Center, 5th Floor, was the only address he knew for the registered agent of the Shelter Group, Frank A. Robino. He also asserted that he knew none of the officers or directors of the Shelter Group personally.

In his affidavit, Leslie Alan Schere states that he is an attorney employed by Robino-Ladd and that he was not on March 7, 1975, an officer managing or general agent of the Shelter Group or an agent authorized at law to receive service of process on its behalf. Schere's affidavit is silent as to the existence or denial of any representations that he may have made to the deputy sheriff, but he does acknowledge having been served with the summons and complaint.

■ The question generally stated is whether Shelter Group is bound by the receipt of service of process by Leslie Schere. Service of process upon a domestic corporation must be made in compliance with Superior Court Rule 4(f)(1)(III):

"Upon a domestic or foreign corporation or upon a partnership or unincorporated association which is subject to ´ suit under common name by delivering copies of the summons, complaint and affidavit, if any, to an officer, a managing or general agent or to any other agent authorized by law to receive service of process and if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant."

Based upon Schere's affidavit, it is undisputed that he was neither an officer nor managing nor general agent of the Shelter Group. By any interpretation of agency law, Schere has neither express nor implied actual authority. However, Shelter Group may be bound by Schere's act on the theory of apparent authority.

■ Apparent authority may be defined as that authority which, though not actually granted, the principal knowingly or negligently permits the "agent" to exercise or which he holds him out as possessing. As is stated in *Petition of Mulco Products,* Del.Super., 11 Terry 28, 123 A.2d 95 (1956), at page 106:

"Although apparent authority is not actual authority, once the authority of the agent has been established, and it is shown that the third party relying on the apparent authority did so rely in good faith and was justified from all the circumstances in so relying, the corporation is bound to the same extent as though actual authority had existed. Thompson on Corporations (3rd Ed.) § 1800."

■ When dealing with apparent authority, the emphasis shifts to third party reliance on the acts of the principal and the agent as opposed to any express or implied grant by the principal. It is important to note that apparent authority can never be derived from the acts of the agent alone. *Arthur Jordan Piano Co., Inc. v. Lewis,* Del.Super., 4 W.W.Harr. 423, 154 A. 467 (1930). See, also, *Bass v. American Products Export and Import Corp.,* 124 S.C. 346, 117 S.E. 594 (1923).

■ Apparent authority is to be determined by indicia of authority which the

principal holds out the "agent" as having. The case of *Frye v. E. I. DuPont de Nemours & Co.*, 129 Me. 289, 151 A. 537, 540 (1930), provides a good analysis of apparent authority:

"It is well settled that the liability of a principal is not limited to such acts of the agent as are expressly authorized or necessarily implied from express authority. All such acts of an agent as are within the apparent scope of the authority conferred upon him are binding upon the principal; apparent authority being that which, though not actually granted, the principal knowingly permits the agent to exercise or holds him out as possessing. And whether or not a principal is bound by the acts of his agent when dealing with a third person, who does now know the extent of the agent's authority, depends, not so much upon the actual authority given or intended to be given by the principal, as upon the question, What did such third person, dealing with the agent, believe and have a right to believe as to the agent's authority from the acts of the principal? When a principal has, by his voluntary act, placed an agent in such a situation that a person of ordinary prudence, conversant with business uses and the nature of the particular business, is justified in assuming that such agent is authorized to perform in behalf of his principal the particular act in question, and such particular act has been performed, the principal is estopped to deny the agent's authority to perform it. [Citations omitted]. This doctrine is established to prevent fraud and proceeds upon the ground that, when one of two innocent persons must suffer from the act of a third, he is to sustain the loss who has enabled the third person to do the injury."

See, also, *Robertson Coal and Coke Co. v. Rothey,* 106 Pa.Super. 463, 162 A. 332 (1932). The Delaware case, *Arthur Jordan Piano Co., supra,* p. 472, emphasizes the importance of justifiable reliance:

"As a general rule, persons dealing with an assumed agent, whether the assumed agency be a general or special one, are bound at their peril, if they would hold the principal, to ascertain not only the fact of the agency, but the nature and extent of the authority, and in case either is controverted, the burden of proof is upon them to establish it. Mechem on Agency (2d Ed.), vol. 1, §§ 743–763.

"However, a principal is responsible for the act of his agent either when he has given to an agent sufficient authority, or when he justifies a party dealing with his agent in believing that he has given to this agent this authority. . . ."

Applying the principles of law to the facts of the present case, we are faced with the situation in which the deputy sheriff went to the premises that were held out to him as the office of the corporation registered agent, Frank A. Robino. Once in that office, it was within ordinary prudence and reasonable diligence considering the nature of a corporate organization [1] (as well as the nature of the deputy sheriff's business) for him to assume that Leslie Schere had authority to accept service. Compare *Limestone Realty Co. v. Town and Country Fine Furniture and Carpeting, Inc.,* Del.Ch., 256 A.2d 676 (1969).

■ By allowing Schere to respond to the deputy sheriff's request for someone to receive service, Shelter Group further held Schere out as an agent with authority to

1. Distinguish this case from *Schwartz v. Thomas* (1955), 95 U.S.App.D.C. 365, 222 F.2d 305, where no apparent authority was found for an attorney to accept service for an individual whom he had occasionally represented. Here, the attorney, Leslie Schere, accepted service for a corporation. Assuming the deputy sheriff was well versed in the Superior Court Civil Rule 4, he would know that general agents of corporations could receive service.

accept service. No more could be reasonably expected from the deputy sheriff than to go to the office of the registered agent and request that someone accept service. And upon having someone accept service, he has justifiably relied on the apparent authority of such person. Therefore, the principal is estopped to deny the valid agency of that person. Defendant's motion to dismiss because of improper service is denied.

---

Defendant also has moved to dismiss plaintiff's mechanic's lien action on three other grounds. These arguments can all be dealt with briefly.

\* \* \*

■ Defendant first suggests that there can be no mechanic's lien against The Shelter Group, Inc. because there is no debt that is enforceable against The Shelter Group, Inc. This position is taken because of an Internal Revenue Service levy on the alleged debt due from Robino-Ladd to plaintiff because of its tax arrearages in the total amount of $39,216.01. This levy, it is claimed, negates plaintiff's petition or request for a mechanic's lien in the lesser amount of $37,204.00. Thus, it is argued that since the underlying debt to plaintiff is completely unenforceable by the plaintiff, there are no grounds from which a mechanic's lien could arise.

The Internal Revenue Service levy does not eliminate or negate plaintiff's right to obtain a mechanic's lien based upon its own debt. The levy of the Internal Revenue Service is only as good as the provable debt the plaintiff has against Robino-Ladd Company and The Shelter Group, Inc. If the debt does not exist, it would not exist for the Internal Revenue Service levy. It is the underlying enforceability of the debt which permits Internal Revenue Service to attach it. If the Internal Revenue Service is unable to collect the money from plaintiff by this levy, the plaintiff, nevertheless, will be required to pay it at a different time if it can.

\* \* \*

■ Defendant also argues that there are genuine issues of material facts which prevent a summary judgment on the mechanic's lien. Considering that the parties are scheduled for trial on the issue of the underlying debt, it would be premature to hold here that there are no fact issues still in dispute. The factual issues concerning the debt in the mechanic's lien action must be left for determination at trial. See *Miller v. Master Home Builders, Inc.*, Del. Super., 239 A.2d 696 (1968).

\* \* \*

The final objection to plaintiff's mechanic's lien action is that Apartment Structures, Inc., the new general contractor, is an "indispensable party". Defendant bases this argument on *Iannotti v. Kalmbacher*, Del.Super., 4 W.W.Harr. 600, 156 A. 366 (1931), which notes the requirement that the general contractor be joined as a party to the mechanic's lien action. Defendant argues that because Apartment Structures, Inc., is the present general contractor, it has knowledge of the work of the subcontractor which makes it an indispensable party.

■ The purpose of requiring a general contractor's presence as a defendant in the mechanic's lien action is that he was the party with whom the subcontractor had his contract. This is the meaning of *Iannotti v. Kalmbacher, supra*. The mere fact that Apartment Structures may have valuable evidence going to the underlying debt does not require that it be joined as a party defendant. Issuing a subpoena to Apartment Structures to appear as a witness would be sufficient. The mechanic's lien action will not be dismissed for failure to join Apartment Structures, Inc.

IT IS SO ORDERED.