IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CARIBBEAN SUN AIRLINES INC. d/b/a/ WORLD ATLANTIC AIRLINES INC., and MIAMI AIR INTERNATIONAL INC., | § § § § § | No. 199, 2024 |
| | § § | Court Below: Superior Court of the State of Delaware |
| Defendants Below, Appellants, | § § § | |
| | § § | C.A. No. N21J-04427 |
| v. | § § | |
| HALEVI ENTERPRISES LLC, | § § § | |
| Plaintiff Below, Appellee | § § § | |

Submitted: November 6, 2024
Decided: January 21, 2025

Before **SEITZ**, Chief Justice, **VALIHURA**, **TRAYNOR**, **LeGROW** and **GRIFFITHS**, Justices constituting the Court *en banc*.

Upon appeal from the Superior Court of the State of Delaware. **REVERSED AND VACATED.**

David B. Anthony, Esquire, Zachary J. Schnapp, Esquire, BERGER McDERMOTT LLP, Wilmington, Delaware; Brian Gottesman, Esquire, GABELL BEAVER LLC, Wilmington Delaware; M. Jane Brady, Esquire, Theodore A. Kittila, Esquire, HALLORAN FARKAS & KITTILA LLP, Wilmington, Delaware; Alexander Angueira, Esquire (*argued*), Aileen Carpenter, Esquire, CARPENTER LAW, PLLC, Miami Beach, Florida *for Appellants Caribbean Sun Airlines Inc. d/b/a World Atlantic Airlines and Miami Air International Inc.*

Kevin S. Mann, Esquire (*argued*), Christopher P. Simon, Esquire, CROSS & SIMON, LLC, Wilmington, Delaware *for Appellee Halevi Enterprises LLC.*

**TRAYNOR**, Justice:

A borrower represented to a lender that he had authority to act on behalf of two corporations that he sought to acquire. The borrower was not an officer or director of, nor did he hold equity in, either corporation. That did not keep the borrower from providing the lender with documents—since acknowledged by him to be false—that identified him as an officer of the corporations. Despite the lender's possession of other documents flatly contradicting the borrower's sham documents, the lender entered into a $7 million loan transaction with the borrower. The loan documents, which included a confession-of-judgment affidavit, were executed by the borrower but also names the two corporations as additional borrowers.

When the borrower defaulted, the lender sued and sought a confessed judgment against all borrowers, including the corporations. The corporation's true officers first learned of the loan transaction and the associated loan documents when they were served with the lender's notice of the entry of a judgment by confession against them.

After a hearing conducted in accordance with our confession-of-judgment statute and the Superior Court rule governing the entry of judgments by confession, the Superior Court entered judgment in favor of the lender, which the corporations then appealed. According to the court, despite the unquestionable fact that the individual borrower did not have actual authority to bind the corporations, his

2

conduct vis-à-vis the lender was sufficient to create the impression that he was in fact authorized—that is, he had what the law of agency recognizes as apparent authority to act on the corporation's behalf. This, for the court, was sufficient to warrant the entry of a confessed judgment against the corporations.

As we discuss below, the Superior Court's formulation of the test for determining whether an agent has apparent authority to act on behalf of its principal was flawed. It focused inordinately on the individual borrower's conduct and representations and insufficiently, if at all, on whether the corporations acted in a way that created a reasonable belief on the lender's part that the borrower was authorized to bind the corporations. And when viewed through the proper lens, the evidence does not support the Superior Court's finding of apparent authority; we therefore reverse its judgment.

I

A

Caribbean Sun Airlines, Inc. ("Caribbean Sun") is a Delaware corporation with a principal place of business in Miami, Florida where it operates a charter airline under the name World Atlantic Airlines. Caribbean Sun's sole equity owner is Tomas Romero, who also serves as its chief executive officer. Iraq Pacheco is Caribbean Sun's chief financial officer. In May 2020, Romero purchased the assets of another charter airline, Miami Air International, through a bankruptcy sale in

3

Florida. Romero re-formed the business as Miami Air International, Inc. ("Miami Air"), also a Delaware corporation with a principal place of business in Miami. Romero is Miami Air's sole equity owner and chief executive officer.

Halevi Enterprises, LLC ("Halevi") is a financial services company based in New York City.

B

To weather the effects of the COVID-19 pandemic, like many firms in the air travel industry, Caribbean Sun and Miami Air utilized the Paycheck Protection Program ("PPP") and Payroll Support Program ("PSP")—established by the United States Congress under the CARES Act—to obtain grants and low-interest loans from the federal government. To assist in obtaining PPP and PSP funding, the companies hired Alan Boyer as a financial advisor in June 2020. Boyer was on Miami Air's payroll, but assisted both Caribbean Sun and Miami Air in obtaining government loans and grants. As part of his job, Boyer was given access to both companies' bank accounts and financial records, and physical access to their facilities at Miami International Airport.

In March 2021, while still employed by Miami Air, Boyer expressed an interest in purchasing all of Romero's equity in both Caribbean Sun and Miami Air. On March 10, Boyer and Romero executed a letter of intent under which World Atlantic Holdings, Inc., an entity owned by Boyer, would purchase 100% of

4

Romero's equity in Caribbean Sun and Miami Air. Under the terms of the agreement, Romero would receive $50 million for his equity, with $5 million due within five days of signing. The parties then amended the letter of intent to extend the payment deadline for the initial $5 million to March 31.

## C

Boyer and his business partner, Joel Plasco, sought to issue bonds and secure loans from multiple lenders to finance World Atlantic Holdings' acquisition of Romero's equity in Caribbean Sun and Miami Air. Halevi was one such lender. Halevi expressed interest in providing financing after being presented the deal by a third-party "deal-finder."[1] After an initial phone call with Boyer, Halevi was "intrigued" and began due diligence in advance of executing a loan agreement for the purpose of partially funding a buy-out of Romero's equity.[2]

Halevi's due-diligence team consisted of Avi Geller and Shaul Kopelowitz. Geller was the Chief Investment Officer of Leonite Capital ("Leonite"). Kopelowitz was an officer of Leonite. Leonite "co-participated" in the loan agreement, providing "about half" of the funding for Halevi's loan.[3] Geller was tasked with "overseeing the due diligence" and "negotiating and structuring the loan."[4] Some of

---

[1] App. to Opening Br. at A476.
[2] *Id.* at A478.
[3] *Id.* at A474.
[4] *Id.* at A475.

5

the due diligence was also outsourced to a consultant, Siegfried Eggert. Halevi's principal, Nachum Labkowski, was "briefly" involved in the due diligence process, but it was understood that Geller would "do[] most of the work."[5]

Throughout the due-diligence process, Boyer was the sole point of contact for Halevi. Halevi requested that both Caribbean Sun and Miami Air provide documents supporting their loan application. On behalf of both companies, Boyer sent Halevi a "plethora" of documents including "financials, . . . pro formas, . . . asset [and] debt schedules [, and] a host of other documents."[6]

Included in these documents were a board resolution and "Special Meeting Minutes" from the Caribbean Sun board of directors dated June 30, 2020, that purported to appoint Boyer as President and grant him authority to bind the corporation and a separate loan agreement purportedly signed by Boyer on behalf of Caribbean Sun and Romero on behalf of Miami Air.[7] At trial, Pacheco testified that the board documents were forgeries, and Romero testified that he never signed the loan agreement.

Boyer also provided Halevi a copy of a filing with the Florida Secretary of State dated June 15, 2020 that listed Boyer as president of Caribbean Sun.[8] With the

---

[5] *Id.* at A476.
[6] *Id.* at A479.
[7] *Id.* at A53–54, A77.
[8] App. to Answering Br. at B1.

exception of this filing, no publicly available documents filed with either the Delaware or Florida Secretaries of State have listed Boyer as an officer or director of Caribbean Sun or Miami Air. After Pacheco discovered that Boyer was listed as president of Caribbean Sun in the June 15 filing with the Florida Secretary of State, he made an amended filing on July 8, 2020 in which he listed himself as president. It does not appear that Boyer provided any filings with the Delaware and Florida Secretaries of State other than the June 15 document to Halevi and its representatives.

Also included in the documents was a private placement memorandum that another of Boyer's entities, WAA Holdings, Inc., had created through which the company sought to raise $21 million "to purchase the common stock of [Miami Air] and [Caribbean Sun]."[9] Curiously, the private placement memorandum included a pro forma ownership summary that, presumably in error, listed Romero as the 100% equity owner of Boyer's entity, WAA Holdings, Inc., and stated that Boyer and Plasco owned "approximately zero %" of WAA Holdings, Inc. common stock.[10] Other sections of the memorandum explained in detail the capital structure of Caribbean Sun and Miami Air, specifying that both entities were owned by

---

[9] App. to Opening Br. at A103.

[10] *Id.* at A106. The memorandum describes WAA Holdings, Inc. as a holding company owned by Romero, but also states that the purpose of the notes being offered by WAA Holdings, Inc. was to purchase shares of Caribbean Sun and Miami Air that were "owned by Tomas Romero." *Id.* at A128.

Romero.[11]  The memorandum also described Caribbean Sun and Miami Air as "operating subsidiaries" of World Atlantic Holdings before clarifying on the next page that Caribbean Sun and Miami Air would only become operating subsidiaries under the corporate structure "contemplated" following an acquisition of Romero's equity.[12]  Despite this information in the private placement memorandum, Geller testified at trial that Halevi and its associates "believed that [Boyer] had an equity interest in Caribbean Sun and Miami Air."[13]  Nowhere did the private placement memorandum list Boyer and his associates as officers and directors of either Caribbean Sun or Miami Air.

Lastly, the documents provided by Boyer included copies of PSP agreements signed on behalf of Caribbean Sun and Miami Air.  Notably, both companies' agreements were signed by Romero as CEO, and Pacheco as CFO.

Kopelowitz conducted a site visit at both companies' headquarters at Miami International Airport.  There, he met with Boyer who seemed to have full access to all Caribbean Sun and Miami Air's facilities.  At this meeting, Boyer told Kopelowitz that he "runs the place" and was "in charge of everything."[14]  During the site visit, the employees present appeared to "respect" Boyer and "let him in"

---

[11] *Id.* at A128–130.
[12] *Id.* at A114–115.
[13] *Id.* at A489.
[14] *Id.* at A555.

whenever he asked.[15]  Boyer also appeared to have access to the employees' computers.  Kopelowitz noted at trial, however, that he did not know Boyer's title at Caribbean Sun, nor did he know the capital structure of either Caribbean Sun or Miami Air.  And when he asked Boyer if he "could look at the planes and whatever," Boyer said no.[16]  At no point during the due-diligence process did Halevi or any of its associates communicate with either Romero or Pacheco.

D

On March 17, 2021, Boyer and Halevi executed a Securities Purchase Agreement for a $7 million Senior Secured Promissory Note (the "Note").  The borrowers under the Note included Caribbean Sun and Miami Air, as well as four entities controlled by Boyer.[17]  Alongside the Note, Boyer also executed a "Security and Pledge Agreement" on behalf of all borrowers, including Caribbean Sun and Miami Air.  This agreement pledged all of Caribbean Sun and Miami Air's existing and future assets as collateral to secure the underlying $7 million loan.  Boyer and Plasco both signed agreements personally guaranteeing payment of the loan.

As a condition to closing, the borrowers were required to provide a confession-of-judgment affidavit under 10 *Del. C.* § 2306.  Boyer, on behalf of

---

[15] *Id.* at A555, 558.
[16] *Id.* at A556.
[17] WAA Holdings, Inc., WAA Holdings, LLC, Miami Holdings, LLC, and Timco Engine Center, Inc.

himself and Plasco, and holding himself out as CEO of all other borrowers, executed an "Affidavit Pertaining to Confession of Judgment by a Non-Resident" in favor of Halevi.[18] The affidavit confesses judgment upon default "for a debt justly due to Halevi . . ." and authorizes the Superior Court to enter judgment against "the Defendants" including Caribbean Sun and Miami Air in the amount of:

> (i) Seven Million and 00/100 US Dollars ($7,000,000), less any payments made on, prior to or after the date of this Confession of Judgment, plus (ii) interest pursuant to the terms of the Note including a default interest rate of five percent (5%) per month on said amount from the date of any default, based upon the occurrence of an event of default under that certain Senior Secured Note ("Note"), in the original principal amount of Seven Million and 00/100 US Dollars ($7,000,000), issued by Defendants to Halevi on March 22, 2021 (the "Note").[19]

Neither Romero nor Pacheco ever saw or discussed these loan documents. Both testified that they were unaware of the Note, the security agreement, and the confession-of-judgment affidavit until service of process upon Romero by Halevi of a lawsuit to collect payment. Boyer corroborated this testimony in his deposition, stating that "Tomas [Romero] and Iraq [Pacheco] were not involved in the actual underwriting and the process of obtaining the loan with Halevi[.]"[20]

After the loan documents were executed, Halevi wired $3,725,000 to WAA Holdings, Inc. and $350,000 to a third-party broker. Soon after, WAA Holdings

---

[18] App. to Opening Br. at A252.
[19] *Id*. at A252–53.
[20] *Id.* at A706–07.

10

wired $5,000,000 to Miami Air. The parties dispute whether the Halevi loan was the source of this payment. Boyer and his associates never completed their acquisition of Romero's equity, and at the time of this appeal, none of the borrowers have made any payments to Halevi.

E

Halevi initiated this action in June 2021 by filing a Notice of Entry of Judgment by Confession in the Superior Court under 10 *Del. C.* § 2306 and Superior Court Civil Rule 58.1. In July 2021, Halevi also filed a plenary action in the Superior Court against the entities named in the confession-of-judgment action, Boyer, Plasco, and other individuals and entities not subject to the confession-of-judgment affidavit. The plenary action was stayed in September 2022 pending the outcome of the present confession-of-judgment proceeding.[21]

In this action, Plasco initially retained counsel who filed an objection to the entry of the confessed judgment on behalf of all defendants before withdrawing because of unpaid attorney fees. After learning of this proceeding, Romero filed a motion to intervene, and new counsel entered an appearance on behalf of Caribbean Sun and Miami Air. The Superior Court then held a hearing under Superior Court Rule 58.1(d)(5) to determine whether Caribbean Sun and Miami Air had effectively

---

[21] Order Staying Action Pending Adjudication of Confession of Judgment, *Halevi Enters. LLC v. Plasco*, C.A. No. N21C-07-071-KMV (Del. Super. Ct. Sep. 20, 2022) (Dkt. 26).

11

waived their due process rights. Trial was held on May 12, 2022. Caribbean Sun and Miami Air were the only defendants to appear. Thus, the Superior Court entered a default judgment against each of the other defendants.[22]

Following post-trial briefing and argument, the Superior Court entered an order granting judgment in favor of Halevi. The Superior Court found that, though Boyer lacked actual authority to bind Caribbean Sun and Miami Air, he did have apparent authority to bind them to the Note and its attached documents. The Superior Court also found that the confession-of-judgment affidavit signed by Boyer was enforceable under a theory of apparent authority. But the court made no explicit finding that Halevi had proved that either Caribbean Sun or Miami Air had "effectively waived" its due process rights, which is the essential fact to be determined at a Rule 58.1 hearing. The Superior Court then entered judgment against Caribbean Sun and Miami Air in the amount of $4,075,000 (the funds wired to WAA Holdings, Inc. and the broker) plus interest of $20,958,232.59.[23]

---

[22] These defendants were WAA Holdings, Inc., WAA Holdings, LLC, Miami Holdings, LLC, Timco Engine Center Inc., Boyer, and Plasco.

[23] The Note contemplated a short-term, high interest loan at the rate of five percent per month, payable within four months. App. to Opening Br. at A145. The Note also imposes substantial charges in the event of default by increasing the principal amount, adding a $10,000 "monthly monitoring fee[,]" and substantial "late charge[s]." *Id.* Though we need not discuss the interest award in resolving Caribbean Sun and Miami Air's claims on appeal, we note that its amount is attention-grabbing. At oral argument, Halevi was unable to provide the calculations that led to this sum.

12

Caribbean Sun and Miami Air moved for reconsideration, which the Superior Court denied. This appeal followed.

## II

"We review claims of violations of constitutional rights *de novo*."[24] Questions of apparent authority are questions of fact.[25] We will not set aside a trial court's factual findings unless they are "clearly erroneous."[26] "Factual findings are not clearly erroneous if they are sufficiently supported by the record and are the product of an orderly and logical deductive process."[27] Despite this deference to the Superior Court's factual findings, we review the Superior Court's formulation and application of legal principles *de novo*.[28]

## III

On appeal, Caribbean Sun and Miami Air contend that the Superior Court erred in finding that Boyer had apparent authority to bind them to the loan agreement with Halevi. In the alternative, they argue that the Superior Court erred by entering a confessed judgment without first determining whether Caribbean Sun and Miami Air knowingly, voluntarily, and intelligently waived their due process rights. They next contend that a confessed judgment is not a remedy contemplated by the Note,

---

[24] *Cohen v. State ex. rel. Stewart*, 89 A.3d 65, 86 (Del. 2014).
[25] *Billops v. Magness Const. Co.*, 391 A.2d 196, 199 (Del. 1978).
[26] *Bäcker v. Palisades Growth Cap. II, L.P.*, 246 A.3d 81, 94 (Del. 2021).
[27] *Id.*
[28] *Gannett Co., Inc. v. Bd. of Managers*, 840 A.2d 1232, 1239 (Del. 2003).

rendering the confession-of-judgment affidavit unenforceable. Should they be found liable under the terms of the Note, Caribbean Sun and Miami Air contend that the Superior Court's award of compound interest constitutes an unjust windfall to Halevi.

A

Before the Superior Court can enter a judgment against a debtor based on a confession-of-judgment affidavit, the court must observe certain procedural safeguards to ensure that a debtor has effectively waived its due process rights. When a debtor objects to the entry of a confessed judgment, "Superior Court Rule 58.1(d)(5) protects a debtor's constitutional rights . . . by providing for an evidentiary hearing to determine whether the debtor effectively waived his due process rights."[29] At this hearing, the plaintiff seeking to enforce a confession-of-judgment affidavit "will be required to prove that the debtor has effectively waived his rights to notice and a hearing prior to the entry of judgment."[30] A debtor has effectively waived its constitutional right to notice and a hearing if the waiver is "knowing, voluntary and

---

[29] *Mazik v. Decision Making, Inc.*, 449 A.2d 202, 204 (Del. 1982).
[30] Super. Ct. Civ. R.58.1(d)(5). *See also id.* at (g)(3).

14

intelligent."[31]  For a waiver to be "knowing, voluntary and intelligent, [there] must be an intentional relinquishment or abandonment of a known right or privilege."[32]

To undertake the constitutional analysis required by Rule 58.1, the Superior Court was required to resolve the threshold issue whether Boyer had authority to bind Caribbean Sun and Miami Air to the Note and attached agreements.  Because the issue of Boyer's authority to bind Caribbean Sun and Miami Air must be resolved before determining whether either entity effectively waived its due process rights under the confession-of-judgment affidavit, we address it first.

## B

Our analysis of Boyer's authority to enter into the transaction with Halevi on behalf of Caribbean Sun and Miami Air is guided by our settled precedent for determining the circumstances under which an agent has authority to bind a principal.

A corporation, being an artificial entity, can act only through its agents.[33]  An agent's actions or representations to a third party bind a principal only if the agent has legally recognized authority to take such action or make such representations.

---

[31] *Pellaton v. Bank of N.Y.*, 592 A.2d 473, 476 (Del. 1991) (quoting *D.H. Overmyer Co., Inc. v. Frick*, 405 U.S. 174, 187 (1972)).
[32] *Id.*
[33] *Transpolymer Indus., Inc. v. Chapel Main Corp.*, 582 A.2d 936, 1990 WL 168276, at *1 (Del. Sep. 18, 1990).

15

"Under the common law of agency, there are two main forms of authority: actual authority and apparent authority."[34]

An agent possesses "actual authority" when it has been expressly or implicitly granted authority by a principal.[35] "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act."[36]

By contrast, apparent authority "is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."[37] This authority is not actually granted by the principal. Instead, it originates when the principal knowingly or negligently permits an agent or other actor to exercise such authority or holds out an agent or other actor as possessing such authority.[38] If a third party relies on this apparent authority in good faith and is "justified in doing so by the surrounding circumstances," the principal is bound to the same extent as if actual authority

---

[34] *Parke Bancorp, Inc.* v. 689 Chestnut LLC, 217 A.3d 701, 712 (Del. 2019).

[35] *Billops*, 391 A.2d at 197.

[36] Restatement (Third) of Agency § 2.01 (2006).

[37] *Parke Bancorp*, 217 A.3d at 712 (quoting *Vichi v. Koninklijke Philips Elecs., N.V.*, 85 A.3d 725, 799 (Del. Ch. 2014)) (internal quotation marks omitted).

[38] *Old Guard Ins. Co. v. Jimmy's Grille, Inc.*, 860 A.2d 811, 2004 WL 2154286, at *3 (Del. Sep. 21, 2004) (TABLE).

existed.[39]  "When dealing with apparent authority, the emphasis shifts to third party reliance on the acts of the principal and the agent as opposed to any express or implied grant by the principal."[40]  It bears emphasizing that "apparent authority can never be derived from the acts of the agent alone."[41]  A third party must use "ordinary prudence and reasonable diligence" in ascertaining the scope of the agent's authority and will not be permitted to enforce an agreement under a theory of apparent authority if it "ignores facts illustrating the agent's lack of authority."[42]

In short, to find that a principal is bound under a theory of apparent authority we must find that "(1) the third party reasonably believes that the [agent] has such authority; and (2) that belief is traceable to the [principal's] manifestations."[43]

C

At this stage, the parties do not dispute, nor do we disturb, the Superior Court's finding that Boyer never had actual authority to bind either Caribbean Sun or Miami Air.  But in reaching its conclusion that Boyer had apparent authority to bind

---

[39] *Id.* (citing *Finnegan Constr. Co. v. Robino-Ladd Co.*, 354 A.2d 142, 144 (Del. Super. Ct. 1976)).
[40] *Finnegan Constr. Co.*, 354 A.2d at 144.
[41] *Id.*
[42] *Int'l Boiler Works Co. v. Gen Waterworks Corp.*, 372 A.2d 176, 177 (Del. 1977) (citing *Arthur Jordan Piano Co. v. Lewis*, 154 A. 467, 472 (Del. Super. Ct. 1930)).
[43] *Sarissa Cap. Domestic Fund LP v. Innoviva, Inc.*, 2017 WL 6209597, at *19 (Del. Ch. Dec. 8, 2017).  *See also* Restatement (Third) of Agency § 3.03 (2006) ("Apparent authority . . . is created by a person's manifestation that another has authority to act with legal consequences for the person who makes the manifestation, when a third party reasonably believes the actor to be authorized and the belief is traceable to the manifestation.").

Caribbean Sun and Miami Air, the Superior Court overlooked the formulation of the apparent authority doctrine outlined above. The Superior Court's conclusion that Boyer had apparent authority to bind Caribbean Sun and Miami Air to the loan agreement rested on its finding that "Halevi reasonably inferred, based on Boyer's conduct and corroborating circumstances, that Boyer was authorized."[44] Similarly, in resolving Caribbean Sun's motion for reconsideration, the Superior Court stated that it was appropriate to find the existence of apparent authority where "the alleged *agent* manifested an impression that he worked in concert with the [principal] on the alleged project."[45] In its analysis, the court afforded primacy to the agent's conduct and representations to the virtual exclusion of any manifestations by Caribbean Sun or Miami Air. This is not the correct standard.

Findings of apparent authority would ordinarily enjoy deference from this Court unless clearly erroneous. But because the Superior Court incorrectly formulated and applied the legal principle of apparent authority in reaching its factual conclusion that Boyer was authorized to bind the appellants, we may review *de novo*.[46] As mentioned, the Superior Court based its decision primarily on Boyer's conduct during the site visit, where Kopelowitz observed that Boyer "had access to

---

[44] *Halevi Enters. LLC v. WAA Holdings, Inc.*, 2024 WL 1192958, at *1 (Del. Super. Ct. Mar. 19, 2024).

[45] Ex. B to Opening Br. at 6 (emphasis added).

[46] *See Gannett*, 840 A.2d at 1239.

all Caribbean and Miami facilities, employees, records, and bank accounts."[47] By contrast, our *de novo* consideration of the question of apparent authority demands a review of the totality of evidence introduced at trial.

## D

Caribbean Sun and Miami Air claim that Boyer never identified himself as CEO or as an equity holder of either company, that the documents available to Halevi included conflicting information concerning Boyer's role at each company, and that Halevi's belief that Boyer was authorized to bind both entities is not traceable to manifestations made by either entity.

In response, Halevi's theory of Boyer's apparent authority to bind Caribbean Sun and Miami Air rests on Boyer's "oral and written representations" as to his role at Caribbean Sun and Miami Air, his access to both companies' facilities, and a tranche of documents provided by Boyer purportedly connecting Halevi's belief that Boyer had authority to manifestations by each principal.[48]  Those documents are: " . . .the executed Officer's Certificate [a document attached to the Note], Special Meeting Minutes and Resolution appointing Boyer as President of Caribbean Sun; . . . publicly available records that reflected [Boyer's] position as president; and . . . the loan agreement [distinct from the loan at issue here] that Boyer signed

---

[47] *Halevi*, 2024 WL 1192958, at *1.
[48] Answering Br. at 20.

as CEO of Caribbean Sun—on the *same page* on which Romero signed as president and CEO of Miami Air."[49]

We conclude that the evidence introduced at trial does not support a finding that Halevi had a reasonable belief traceable to the manifestations of either Caribbean Sun or Miami Air that Boyer was empowered to bind them to the loan agreement with Halevi, execute the confession-of-judgment affidavit on their behalf, or pledge their assets as collateral.

Turning first to the documents provided by Boyer during the due diligence process concerning his authority to sign on behalf of Caribbean Sun, Halevi argues that its belief that Boyer was authorized to sign was reasonable and traceable to Caribbean Sun's manifestations because it possessed what it claims to be meeting minutes and an accompanying resolution of the Caribbean Sun board of directors appointing Boyer as president of the corporation. These documents, dated June 30, 2020 and purportedly signed by Pacheco, were not authenticated by witness testimony or by other means under Delaware Uniform Rule of Evidence 901 at trial. Though Caribbean Sun and Miami Air made an authentication objection at the time, it appears that this objection went unresolved by the trial court.

---

[49] *Id.* (emphasis in original).

Caribbean Sun and Miami Air claim on appeal, as they did at trial, that these board documents are forgeries and were consequently inadmissible as evidence of actions taken by the Caribbean Sun board. Pacheco testified at trial that he had never seen nor signed them, and while Halevi's witnesses testified that they had no reason to doubt the documents' authenticity, they also testified that took no steps to confirm their belief that the documents were authentic. "[A]uthentication or identification [i]s a condition precedent to admissibility."[50] Under Delaware Rule of Evidence 901, to authenticate a document, the document's proponent "must produce evidence sufficient to support a finding that the [document] is what the proponent claims it is."[51] Since these documents were not authenticated as genuine records of the Caribbean Sun board of directors at trial, they are not admissible as evidence of actions taken by Caribbean Sun's board. These documents are admissible only as evidence of information provided to Halevi by Boyer during due diligence because Geller confirmed in his testimony that these are, in fact, the documents he was provided by Boyer.[52]

The purported board documents, then, are not evidence of a manifestation by Caribbean Sun that Boyer had authority to bind the company in this transaction. And

---

[50] *Paron Cap. Mgmt, LLC v. Crombie*, 2012 WL 214777, at *3 (Del. Ch. Jan 24, 2012) (quoting D.R.E. 901).
[51] D.R.E. 901.
[52] Halevi appeared to make this concession in its post-trial briefing, *see* App. to Opening Br. at A855, and again at oral argument.

21

in any case, reviewing the purported board documents alongside other documents provided by Boyer raises numerous red flags that, applying "ordinary prudence and reasonable diligence[,]"[53] should have signaled to Halevi that further investigation was necessary. For one, the filing with the Florida Secretary of State identifying Boyer as president is dated June 15, 2020, 15 days before he was purportedly appointed as president by the Caribbean Sun board. And the copies of PSP loan agreements signed on behalf of Caribbean Sun that were in Halevi's possession, dated February 24, 2021, less than a month before the due diligence on the loan began, show Romero's name and signature next to the title "CEO" and Pacheco's name and signature next to the title "CFO."[54] Throughout the due diligence process, Halevi was also aware the Romero was the only equity owner of Caribbean Sun. Taken together, these facts indicate that Halevi possessed conflicting information as to Boyer's role and the identity of Caribbean Sun's officers. They also do not provide any indication of a manifestation made by Caribbean Sun that would lead Halevi to reasonably believe that Boyer was authorized to sign on behalf of the corporation.

The evidence at trial concerning Boyer's authorization to sign on behalf of Miami Air is also insufficient to show that Halevi's belief that Boyer was authorized

---

[53] *Int'l Boiler Works Co*, 372 A.2d at 177; *Finnegan Const. Co.*, 354 A.2d at 145.
[54] App. to Opening Br. at A294.

22

to bind the company was reasonable or to connect such a belief to a manifestation by Miami Air.  Halevi points to an August 2020 loan agreement that Boyer had signed as CEO of Caribbean Sun, but that Romero had signed as CEO of Miami Air.[55]  Taken at face value, this document cuts against Halevi's argument that Boyer was authorized to sign on behalf of Miami Air because it indicates that Halevi was aware that Romero was Miami Air's CEO.  This purported loan agreement also does little to resolve the conflicting information that was in Halevi's possession concerning Boyer's authority to sign on behalf of Caribbean Sun.  Moreover, Halevi was also in possession of Miami Air's PSP loan agreements, dated October 7, 2020.  Like Caribbean Sun's PSP loan agreements, Romero and Pacheco had signed these documents as CEO and CFO respectively on behalf of Miami Air.  These documents give no indication that Boyer was CEO of Miami Air and certainly manifest no action or conduct by Miami Air that would indicate to a reasonable third party that Boyer was its CEO or otherwise had authority to bind the corporation.

The Superior Court concluded, and Halevi argues here, that "Halevi had no duty to review corporate documents filed with either Delaware or Florida to confirm the authority and status of Boyer."[56]  Halevi is correct that our cases impose no

---

[55] Appellants claim that this document too should be excluded as inadmissible on authenticity grounds under D.R.E. 901.  As with the board documents above, we note that there is no testimony or other evidence indicating that this loan document is, in fact, what it purports to be.

[56] *Halevi*, 2024 WL 1192958, at *1.

sweeping requirement that a third party must "review past public filings" before executing a loan or other transaction with an agent in order to support a finding that such an agent has apparent authority.[57] But a party's belief as to an apparent agent's authority must be reasonable, and this often calls for investigation. When ordinary prudence and reasonable diligence dictate that further inquiry be made—for example, when due diligence uncovers conflicting information concerning the role of an agent and identity of key corporate actors—a third party cannot reasonably believe that the agent is authorized to bind a principal without undertaking such investigation. We have previously stated that "the third person must make a preliminary investigation as to the agent's apparent authority and additional investigations if the facts so warrant[;]"[58] here, the facts did. And had Halevi conducted such an investigation, they would have uncovered "Foreign Profit Corporation" reports filed with the Florida Secretary of State listing Pacheco as President of Caribbean Sun, and franchise tax reports filed with the Delaware Secretary of State as recently as February 2021—the month before the loan was executed—listing Romero as CEO of both entities.[59]

---

[57] Answering Br. at 24.

[58] *Int'l Boiler Works*, 372 A.2d at 177 (citing 2A C.J.S. Agency § 169). *See also* 2A C.J.S. Agency § 169 ("If reasonable due diligence by the party seeking enforcement would have revealed that the apparent agent was not, in fact, authorized to act, then apparent authority does not exist.").

[59] *See, e.g.*, App. to Opening Br. at A79–80.

The officer's certificate concerns both Caribbean Sun and Miami Air. The document stated that, by signing it, Boyer affirmed that he was the CEO of both Caribbean Sun and Miami Air and authorized to bind the entities. But Boyer's act of signing the certificate is not a manifestation by either Caribbean Sun or Miami Air. The touchstone of apparent authority is "a person's manifestation that another has the authority to act with legal consequences for the person who makes the manifestation."[60] Boyer acted alone in signing the officer's certificate. As we have held, "apparent authority can never be derived from the acts of the agent alone."[61] The act of signing the officer's certificate is not a manifestation by either principal. Accordingly, Halevi's reliance on this document, in the face of substantial—and readily available—countervailing evidence, to support its argument that Boyer had apparent authority to bind Caribbean Sun and Miami Air is misplaced.

The same goes for the private placement memorandum. The document states that it was created by Boyer's entity, WAA Holdings, Inc. There is no indication that Caribbean Sun or Miami Air had any connection to this document or knew that it existed before this litigation. It follows that any belief that Boyer was authorized to bind each entity based on the contents of the private placement memorandum is

---

[60] Restatement (Third) of Agency § 3.03.
[61] *Finnegan Constr. Co.*, 354 A.2d at 144.

untraceable to a manifestation by either principal and does not support a finding of apparent authority.

Halevi's argument that the facts of Kopelowitz's site visit support a finding of apparent authority is also unavailing. As mentioned, the Superior Court placed great weight on this testimony, highlighting Boyer's extensive access to Caribbean Sun and Miami Air's facilities, records and bank accounts. But this access, without more, cannot support a finding of apparent authority.

Granting Boyer access to their facilities, records, and bank accounts is certainly a manifestation by Caribbean Sun and Miami Air. But as we have discussed, "[a]pparent authority is created by a person's *manifestation that another has the authority to act with legal consequences* for the person that makes the manifestation . . . ."[62] Granting access to facilities and corporate accounts to employees who have no authority to bind an entity is done frequently in the ordinary course of business. For example, a wide range of individuals, from accountants to human resources professionals to low-level managers, in the course of performing their job duties, need access to a corporation's offices, records, and bank accounts. Because they are commonplace and essential to the functioning of most businesses, these manifestations alone do not give rise to a reasonable belief by a third party that

---

[62] Restatement (Third) of Agency § 3.03 (emphasis added).

an agent is authorized to bind the entity to a major transaction such as Halevi's loan and security agreement.

During the site visit, there were no other manifestations from either corporation that Boyer was empowered to act on their behalf in a transaction of this nature. While he had access to both corporations' facilities and information, this access was no more extensive than would have been given to many other employees. And Boyer's statement that he "runs the place" and the reactions of other employees to Boyer's presence is not a manifestation by either Caribbean Sun or Miami Air. Based on Boyer's statement that he could not take Kopelowitz to see the aircraft, it also appears that there were limits to the access that was given to Boyer by Caribbean Sun and Miami Air. Giving Boyer sufficient access to Caribbean Sun and Miami Air's facilities to conduct the site visit with Kopelowitz does not, without more, give rise to a reasonable belief that Boyer could bind each company.

To sum up, Halevi was in possession of documents that, for the most part, did not constitute manifestations by either Caribbean Sun or Miami Air that Boyer had authority to bind either entity to the Note. Even if such manifestations had been present, the conflicting information within those documents precludes a finding that any belief as to Boyer's authority to bind each entity based on their contents was reasonable. Lastly, the access to facilities, corporate records, and bank accounts

27

given to Boyer, enabling him to conduct the site visit with Kopelowitz, is insufficient, standing alone, to support a finding of apparent authority.

E

Having concluded that Boyer did not have apparent authority to bind either entity, we return to Rule 58.1's requirement that a plaintiff prove that a debtor has effectively waived its due process rights before a judgment based on a confession-of-judgment affidavit may be entered. In its opinion, the Superior Court did not make the finding that is the ultimate object of a Rule 58.1(d)(5) hearing—that Caribbean Sun and Miami Air knowingly, voluntarily, and intelligently waived their due process rights. Instead, the Superior Court wrote that "[a]s a result of apparent authority, Caribbean and Miami agreed to confess judgment and waived any otherwise applicable due process rights."[63]

Upon review of the record, it appears that Halevi introduced no evidence at trial supporting a finding that Caribbean Sun or Miami Air knowingly, voluntarily, and intelligently waived their due process rights. Instead, Halevi argued at trial, and contends on appeal, that "Boyer had apparent authority to act on behalf of [Caribbean Sun and Miami Air], including waiving any rights of [either entity]."[64] Halevi cites no authority in its answering brief—and conceded at oral argument that

---

[63] *Halevi*, 2024 WL 1192958, at *2.
[64] Answering Br. at 27.

it had none—to support its contention that a principal could knowingly, intelligently, and voluntarily waive a constitutional right under a theory of apparent authority.

Because we conclude that Boyer lacked apparent authority to bind either entity to the Note and the attached documents, Halevi's argument fails outright. We add for completeness, however, that the facts established at trial show that neither Romero or Pacheco, nor any other insiders at either Caribbean Sun or Miami Air knew of the Note or the confession-of-judgment affidavit until Halevi brought suit to collect payment. Since neither Caribbean Sun nor Miami Air knew that the Note or the confession-of-judgment affidavit existed until Halevi brought suit, a purported waiver by either entity could not be knowing, voluntary, and intelligent. And a finding of apparent authority is not a substitute for the constitutional analysis that is required by Rule 58.1. A principal need not be—and often is not—knowingly or voluntarily bound by the acts of an apparent agent. It follows that there may not be an "intentional relinquishment or abandonment of a known right or privilege"[65] where an apparent agent acts without the knowledge of its principal.

Because the apparent authority and due process issues are dispositive, we need not consider Caribbean Sun and Miami Air's remaining arguments on appeal. We note that our decision does not leave Halevi without recourse to recover the funds it

---

[65] *Pellaton*, 592 A.2d 473 (quoting *Overmyer*, 405 U.S. at 187) (internal quotation marks omitted).

29

wired without repayment. It may, if it so chooses, continue to pursue the plenary action in the Superior Court that has been stayed pending the outcome of this case.

IV

For the reasons set forth above, we REVERSE and VACATE the Superior Court's confessed judgment against Caribbean Sun Airlines, Inc. and Miami Air International, Inc.